GEORGE H. SELOVER v. ISLE HARBOR LAND COMPANY.[1]

February 11, 1904.

Nos. 13,575 (77).

**Specific Performance.**

In an action to enforce the specific performance of a contract on the part of a corporation to issue thirty per cent. of its common stock in consideration of the transfer to it of certain land contracts of purchase, *held*:

**Complaint.**

1. The complaint states a cause of action in equity.

**Evidence.**

2. The evidence sustains the finding of the court to the effect that the original option contract for the purchase of lands held by respondent was transferred to one of the promoters of the corporation under an agreement which provided that the promoter and his associates would furnish all the money necessary to make the cash payments upon the land; that a corporation should be formed for the purpose of enabling the parties interested to carry out the terms of the contract and dispose of the lands, and that the interest of respondent in the business of the corporation to be formed was to be thirty per cent. of the net profits; that appellant corporation was formed for such purpose; that the option contract and the final contract for the purchase of the lands are held in trust for the benefit of the corporation; that all of the officers and stockholders of the corporation and the corporation had notice of respondent's interest, and accepted and adopted the agreement respecting respondent's interest.

[1] Reported in 98 N. W. 344.

**Equitable Relief.**

3. Respondent was not occupying the position of a double agent in receiving a commission for selling the lands, while at the same time he retained an interest with the purchaser, and equitable relief will not be withheld upon the mere ground that the company organized to handle the business was incorporated under the laws of a foreign state, and that the court has no jurisdiction to interfere with the internal management of such corporation. An action at law for the recovery of damages would not afford adequate relief in this case, since the stock in question has no market value, and has never been sold. The agreement under which the lands were purchased and the corporation organized was that preferred stock should be issued for the amount of the money required to pay for the lands and conduct the business, and that common stock should represent only the net profits; and it appearing, from the findings of fact, that the business for which the corporation was organized, viz., the sale and disposition of the lands, has not been fully completed, and it not having been determined whether or not there will be any net profits, the judgment that the common stock be issued to respondent was prematurely entered.

**Modification of Judgment.**

Ordered, that the judgment be modified so as to declare that respondent is the owner of and entitled to thirty per cent. of the net profits of the business, and that whenever, in the due course of business, the corporation issues its common stock, respondent shall be entitled to have issued to him his proportionate share thereof; and it is further ordered that the trial court retain jurisdiction of the case, to the end that, upon a supplemental complaint and hearing, such order and judgment may be entered as is required to protect and enforce respondent's interests, if the parties to the action do not otherwise agree.

Action in the district court for Hennepin county to enforce specific performance by defendant Isle Harbor Land Company of a contract alleged to have been made between plaintiff and one R. A. Griffing, for the issue to plaintiff of thirty per cent. of the common stock of defendant upon its incorporation. The case was tried before Elliott, J., who found in favor of plaintiff and directed that judgment be entered requiring defendant to issue thirty per cent., or thirty-six hundred shares, of its common stock to plaintiff upon his written demand therefor. From an order denying a motion for a new trial, defendant appealed. Order for judgment modified.

*James I. Best* and *Lancaster & McGee,* for appellant.

Equity will not compel the specific performance of a contract to convey personal property, save in exceptional cases and under peculiar circumstances, and plaintiff's case does not come within any of the exceptions. Northern Trust Co. v. Markell, 61 Minn. 271; Moulton v. Warren Mnfg. Co., 81 Minn. 259.

Courts of equity do not compel specific performance, except in those cases where the contract is not only clear, certain, definite, unambiguous and free from reasonable doubt, but is also founded upon a valuable, reasonably adequate consideration, and fair, just and equitable. Equity will not interfere to compel the performance of a contract that is not founded upon a valuable or meritorious consideration, and is in all respects fair, just and equitable; nor interfere to compel specific performance of an alleged contract, where there is any bad faith on the part of the plaintiff, or where the plaintiff has, in procuring the execution of the contract, misrepresented his relation thereto, or has maintained a dual relation in reference to the subject matter of the contract. Rice v. Wood, 113 Mass. 133; 1 Pomeroy, Eq. Jur. §§ 400, 401; Martin v. Walker, 84 Minn. 8; Crump v. Ingersoll, 47 Minn. 179; Smith v. Townsend, 109 Mass. 500.

*Hale & Montgomery* and *Douglas A. Fiske,* for respondent.

The complaint states a cause of action in equity. Wylie v. Coxe, 15 How. 415; May v. Le Claire, 11 Wall. 217, 236; 1 Story, Eq. Jur. § 716; Adams v. Messinger, 147 Mass. 185; Moses v. Scott, 84 Ala. 608; Treasurer v. Commercial, 23 Cal. 391; White v. Schuyler, 1 Abb. Pr. (N. S.) 300; Adderly v. Dixon, 1 Simons & S. 607; Cushman v. Thayer, 76 N. Y. 365.

The evidence of the adoption of the contract made between plaintiff and Griffing is sufficient to sustain the findings of the court as to that fact. It is not necessary that such adoption or acceptance be express; but it may be shown from acts or acquiescence of the corporation, or its authorized agents, as any similar contract may be shown. Battelle v. N. W. C. & C. P. Co., 37 Minn. 89; McArthur v. Times Printing Co., 48 Minn. 319; 1 Clarke & M. Priv. Corp. § 104.

The contract between Selover and Griffing was sufficiently definite

and clear to justify a court of equity to decree specific performance thereof. Pomeroy, Cont. Spec. Per. § 159; Fry, Spec. Per. § 204.

LEWIS, J.

Respondent, claiming to be entitled to thirty per cent. of the common stock of appellant corporation, according to the terms of a contract entered into between himself and the promoters, stockholders, and officers of the corporation, brings this action to compel the specific performance of the contract, and requiring the stock to be issued.

In substance, the complaint alleges, and the court has found, that respondent held an option contract, of date August 29, 1900, with the Northwestern Improvement Company, for the purchase of about sixty thousand acres of land, the purchase price of which was to be $2 an acre, $10,000 of which was to be paid the first day of October, November, and December, 1900, respectively, and the remainder in five equal annual instalments, with interest at six per cent. The option contract provided that, in default of payment, the $500, having been paid in cash, would be forfeited, and the contract cancelled. This option was obtained by respondent through the instrumentality of M. E. Rutherford, and was in pursuance of a letter, dated July 20, 1900, from the Northwestern Improvement Company. While respondent was negotiating for the option, and just prior to the time of obtaining it, he was introduced, in Minneapolis, to Robert A. Griffing of Hartford, Connecticut, and invited him to join in the purchase of the lands called for in the option.

Respondent's proposition to Mr. Griffing was: That, if he would go into the deal, he (Griffing), with any persons he might associate with him, was to furnish all of the money to make the three cash payments, and that the party making the payments should receive the same back, with interest at six per cent., and, of the net profits, after the repayment of such amounts, with interest, Griffing and his associates should receive fifty per cent., and respondent fifty per cent., and that a corporation should be organized under the laws of South Dakota, to be called the Isle Harbor Land Company, to which respondent should turn over the option contract. The capital stock of the company was to be $150,000, of which not more than $30,000 was to be preferred stock, and $120,000 was to be common stock. That the preferred stock

was to represent, and to be issued in consideration of, the money so furnished by Griffing and his associates, and that the common stock was to be issued to represent the net profits, or equity in the lands over and above the cost thereof, and the expense of handling the same, and that the corporation was to be formed for the sole purpose of carrying out the contract and disposing of the lands, and that the stock was to be issued immediately upon the organization of the company, and assignment made to it of the final contract of purchase. It was further agreed that respondent should assign and turn over to some person, as trustee, the option contract, to be held by such trustee until the organization of the company was completed.

This proposition so offered by respondent was taken under consideration by Griffing, and, in order to have sufficient time to thoroughly consider it, Griffing advanced $500 thereon. That thereupon articles of incorporation of the Isle Harbor Land Company were drawn, signed, and acknowledged by respondent, and delivered to Griffing. That on September 18 Griffing declined to enter into the contract upon the terms mentioned, and the proposition was thereupon modified so that respondent was to receive thirty per cent. of the common stock, and Griffing seventy per cent. thereof, and, as so modified, the proposition became a contract between the parties. Thereafter, in accordance with the agreement of September 25, 1900, respondent, in consideration of the understanding between himself and Griffing, assigned to Stephen Cromwell, as trustee, all his right and interest in the optional contract, upon the condition, however, that the agreement between respondent and Griffing be fulfilled, or that a reassignment be made. The trustee thereupon took possession of the option contract, and held the same for the benefit of Griffing and his associates and respondent, and for the corporation thereafter to be organized.

The Isle Harbor Land Company became fully organized on November 7, and a short extension of time was obtained from the improvement company for the making of the cash payments. October 5, at the request of Griffing, respondent executed a second assignment of his interest to the trustee, which was in form absolute, leaving out the proviso with reference to a reassignment; but it was in consideration of the agreement then existing between respondent and Griffing with respect to the formation of the company, sale of the lands, and division

of the stock.   October 10, at the request of Griffing, the trustee, Crom-
well, assigned to Griffing the contract and interest which he held in
trust, and delivered the contract to him; and it is found by the court
that Griffing received such assignment, and continued thereafter to
hold it, in trust for himself and associates, for the corporation and
respondent.   In pursuance of the contract, Griffing paid the amounts
required under the option contract, and, after making the cash pay-
ments referred to, a final contract of purchase was entered into by
Griffing with the improvement company, which provided for the re-
mainder of the purchase price to be paid in five annual instalments;
and the court found that Griffing held such final contract, and continued
to hold it, in trust for the benefit of all parties interested, including re-
spondent and the corporation.

The court further found that $35,000, par value, of the preferred
stock was issued to Griffing and his associates, and that no common
stock was ever issued.   The court also found

> "That there is no market value either for said common or
> preferred stock, and there is none for sale in the market, nor
> can the value of either be ascertained at the present time; that
> the value of said stock depends entirely upon the sale of said
> lands and the outcome of said enterprise; that the common stock
> which plaintiff is entitled to, as hereinafter stated, if issued to
> him, would be of special value to him, in that it would give him
> a voice in the management of the affairs of the corporation."

The court also found that the option contract and the final contract
of purchase held by Griffing in trust for the company and all interested
parties constitutes the only property of any kind ever held or owned by
appellant corporation, and that the corporation has never engaged in
any other kind of business than that of selling the lands referred to,
and that all of the business conducted by Griffing as the general man-
ager and president of the corporation, and all the lands sold and moneys
received, were for the benefit of the company.   It is further found by
the court that during all of the time of the formation of the corporation,
and the sale of lands by it, or by Griffing on its behalf, Griffing and all
of the stockholders, directors, and officers had full notice and knowl-
edge of the option contract turned over to the company under the agree-

ment between respondent and Griffing. It is also found that Ruther-
ford received a commission from the Northwestern Commission Im-
provement Company for the sale of such lands, and that he paid to re-
spondent, in consideration of his finding a purchaser for the same,
a part of his commission, but that respondent was not acting as agent
of Griffing or the company in the purchase of the lands, and that he
did not occupy a fiduciary relation with them in selling and disposing
of his option contract, and, further, that all of the stockholders and
parties interested in the corporation knew that respondent was receiv-
ing a part of such commission from Rutherford, and that it was to
be represented in the form of preferred stock, which was in fact issued,
and that such stockholders, officers, and the corporation duly ratified
respondent's act in receiving such commission and stock. As a con-
clusion of law, the court directed that a decree be entered in favor of
respondent, requiring appellant corporation to issue thirty per cent.,
or $36,000, par value, of the common stock.

. 1. The complaint states a cause of action in equity, and is not open to
the objection that it does not allege a formal adoption by appellant com-
pany of the contract existing between respondent and Griffing. It is
alleged that all of the stockholders and officers and the corporation had
full notice and knowledge of the contract, adopted the same, and con-
sented to its terms, and that the object in organizing the corporation
was to carry into effect the purposes of the contract, and to sell the
land. The complaint is not defective because it appears from its face
that the common stock had never been issued. All the other allega-
tions of the complaint being true, equity would require the issuance
of the stock, notwithstanding the fact that the board of directors had
never taken any action with reference thereto.

2. The evidence reasonably tends to sustain the complaint, and the
findings of the court are supported by the evidence. Although there
was no express acceptance of the contract between Griffing and re-
spondent by the corporation, the evidence tends to show that the pro-
moters, stockholders, and all interested in the company knew that all
of the property which the corporation owned or expected to own was
purchased from the Northwestern Improvement Company by means of
the option contract which had been secured by respondent. The cor-
poration was formed for the very purpose of carrying that contract in-

to effect, and it was well known and understood by every person connected with the company what respondent's interest was; and by proceeding to organize the company and issue the stock, to pay for the lands and to sell the same, there was an express recognition of his rights, and such action in connection therewith constituted a complete ratification and adoption of the contract. According to the evidence and findings, there is not a single person, interested as a stockholder or otherwise, who did not have knowledge or acquiesce in everything that had been done. The corporation itself was a mere instrument to better carry out the purposes of the parties interested, and if the preferred stock has any value, and if there are to be any profits, such value and profits are from the interest turned over to the company by respondent.

Although the execution of the second assignment in trust was absolute in form, it does not follow that, by executing it in that manner, respondent intended to change the nature of his contract so as to relinquish all the interest he had therein. Considerable was said and something done by respondent with a view to building a railroad to the lands for the purpose of opening them up, but there was not sufficient evidence to require a holding that respondent's interest in the contract was contingent upon the completion of such scheme. It was rather in the nature of an independent venture, having no direct connection with the purchase and sale of the lands, except as it was hoped to increase them in value. It is immaterial that respondent required Mr. Griffing to give him a $500 check before allowing him time to consider the proposition first offered, and that respondent used the money so obtained in perfecting the option which he then had the privilege of taking. This fact alone does not indicate bad faith, and in no way operated as a fraud upon Mr. Griffing or appellant. It was of no consequence that during their first talk it was the expectation of respondent to furnish a part of the money to make the first payments. The court has found, and the finding is supported by the evidence, that Griffing agreed to furnish all the money necessary, if respondent reduced his interest from fifty per cent. to thirty per cent. of the common stock.

3. Equitable relief will not be denied for the reason that, in securing the contract from the improvement company, respondent was acting in conjunction with Rutherford, and obtained part of the commission

from the improvement company for effecting such sale. It does not appear that any fraud was practiced upon Griffing or appellant company by reason thereof. The position of respondent was not that of a double agent. He was not representing both the seller and the purchaser, in an inconsistent or conflicting sense. The lands were offered for sale at a stipulated figure, upon which a commission was allowed, and there is no rule of law to prevent the party who in good faith earns and receives such commission by effecting a sale from being at the same time interested as a purchaser. Quite another question would arise if no fixed price had been established, and the agent was relied upon and expected to obtain the best figure possible for the lands. Merriam v. Johnson, 86 Minn. 61, 90 N. W. 116. However, the court has found that Griffing and all the stockholders and the corporation knew what interest respondent had by reason of this connection, and no objection was made to it.

4. Equity will not be denied in this case upon the ground alone that appellant is a foreign corporation, and that the courts of this state have not jurisdiction to control the management of its internal affairs. Under the evidence and the findings of fact, appellant company stands in the same position with reference to the rights of respondent as did Griffing, with whom the original contract was made; and, if this were the only objection, there is no reason why the corporation should not be compelled to carry out its agreement and issue the stock.

5. The relief granted by the trial court is that a decree be entered directing that thirty per cent. of the common stock be issued and delivered to respondent. We are satisfied that respondent would be entitled to the full measure of such relief if it appeared that the corporation had reached that condition in the management of its affairs that the issuance of its common stock was all that remained to be done in order that the net profits of the corporation might be represented thereby. But as we understand the record, it does not appear that sufficient funds are on hand to meet the necessary expenses of conducting the business, and the deferred payments, with interest. The original contract was entered into and the corporation formed upon the express understanding and agreement that preferred stock should be issued to an amount equal to the cash advanced, with interest at six per cent., and that common stock would be issued to represent the net profits only. True,

at that time, and when the corporation was organized, it was estimated and taken for granted that all the cash that would be required was an amount sufficient to meet the cash payments, viz., $30,000, and on that supposition it was agreed that the stock would be issued as soon as the company should be organized. The record discloses the fact that sales of land did not proceed as rapidly as was anticipated, that cash did not come in to take care of current expenses as quickly as was expected, and that it became necessary to increase the issue of the preferred stock, and that respondent knew of these conditions, and of the necessity for issuing an amount of preferred stock equal to the amount of cash required. Until the purposes for which the original contract was made and the corporation formed are completely carried out, it will not be known to a certainty whether or not there will be any net profits, and consequently any common stock to be issued. In this respect the respondent stands in the same position as every other stockholder.

The measure of relief is not governed by the rule adopted in Northern Trust Company v. Markell, 61 Minn. 271, 63 N. W. 735, and Moulton v. Warren Mnfg. Co., 81 Minn. 259, 83 N. W. 1082. From the facts disclosed in those cases, it was evident that the law afforded adequate and complete redress in an action for damages. Here, however, the stock has no value, because it has never been issued, has never been upon the market, and none has ever been sold. Whether or not it will have any value depends entirely upon the success of the proposition when completed.

For the reason stated, the judgment cannot stand as entered. The direction of the court that the stock be issued to respondent immediately was premature. It is ordered that the judgment be modified so as to declare that respondent is the owner of, and entitled to, thirty, per cent. of the net profits of the business, and that whenever, in the due course of business, the corporation issues its common stock, respondent shall be entitled to have issued to him his proportionate share thereof. And it is further ordered that the trial court retain jurisdiction of the case, to the end that, upon a supplemental complaint and hearing, such order and judgment may be entered as is required to protect and enforce respondent's interests, if the parties to the action do not otherwise agree.

Modified.