GEORGE H. SELOVER v. ISLE HARBOR LAND COMPANY.[1]

March 8, 1907.

Nos. 14,912—(118).

**Corporation—Issue of Stock—Pleading.**

> Upon a former appeal (91 Minn. 451) it was held that the judgment of the trial court was premature in directing the company to immediately issue to appellant thirty per cent. of its common stock, and the judgment was accordingly modified, and the trial court directed to retain jurisdiction of the case for the purpose of protecting and enforcing appellant's interest as might appear necessary by supplemental complaint.
>
> Upon this appeal from an order sustaining a demurrer to a supplemental complaint, *held*, it appearing that the lands purchased have all been paid for and that it is not necessary to issue any more preferred stock for the purposes provided for by the contract, appellant is entitled to have issued to him his proportion of the common stock. The supplemental complaint states a cause of action.

Appeal by plaintiff from an order of the district court for Hennepin county, John Day Smith, J., sustaining a demurrer to the amended supplemental complaint. Reversed.

[1] Reported in 111 N. W. 15?

*Hale & Montgomery* and *Douglas A. Fiske,* for appellant.
*James I. Best* and *Lancaster & McGee,* for respondent.

LEWIS, J.[2]

This action was originally commenced for the purpose of requiring respondent company to issue to appellant thirty per cent. of the common stock of the corporation.

The facts will be found stated in full in the former opinion. 91 Minn. 451, 98 N. W. 344. It was found by the trial court that appellant was the equitable owner of thirty per cent. of the net profits of the business for which the company was incorporated, and that he was entitled to have issued to him his proportionate share thereof. It was ordered that the trial court retain jurisdiction of the case, to the end that upon a supplemental complaint and hearing such order and judgment might be entered as was required to protect and enforce appellant's interests, if the parties to the action did not otherwise agree. The present appeal comes up from an order sustaining a demurrer to a supplemental complaint which was served in May, 1906.

The supplemental complaint sets out the commencement of the action; that a trial was had, decision rendered, appeal taken, and the decision of this court, and that after the decision of this court, November 27, 1900, the first meeting of the board of directors of the company was held, and it was then and there voted that $50,000 of the preferred stock should be issued and sold at par, in such amounts as might be necessary to pay for the lands described in the original complaint; that the cash received by the company up to September 28, 1905, from the sale of a portion of the lands, was $190,544.24, and that the cash received from the sale of the preferred stock was $50,-000; that there was also received as a loan from the president $21,-022.24, and from commissions $3,474.76, making a total of $265,-041.24; that of such amount there had been paid out at such date for the purchase price of the lands $139,003.53, and other items, including interest on deferred payments, taxes, commissions, miscellaneous expenses, loan from the president, salaries, legal expenses, etc., amounting to $115,220.45, making a total expenditure of $254,223.98; that

[2] ELLIOTT, J., took no part.

only $45,000 of the $50,000 authorized of the preferred stock was issued for the purpose of making payments on land, and that all of the other moneys paid out, as mentioned, was money received from the sale of a portion of the lands; that on October 8, 1903, December 11, 1903, January 18, 1904, and December 22, 1904, the board of directors of the company voted and caused to be paid upon the preferred stock out of the earnings of the company eight per cent. dividends, all in violation of the terms of the conditions of the original contract, and December 22, 1904, the board of directors passed a resolution authorizing the issue of two hundred and fifty shares of the preferred stock of the company, to be used when needed in aid of the construction of a railroad and in draining the same; that all of the lands were paid for by money received as follows: $45,000 from the sale of preferred stock at par, and the balance from the sale of a portion of the lands; that about thirty five thousand acres of the land remained unsold, and that the same, when paid for, were conveyed in fee simple to the company, and are now held and owned by it; that there are no debts or obligations outstanding against the company; that its assets consist of about $40,000 in contracts upon lands sold which have not yet matured, and in the unsold portion of the land amounting to $210,000, making total assets of $250,000.

There are other allegations in the complaint directed particularly to the mismanagement of the affairs of the company by the board of directors and its officers. These acts consist in paying large salaries to the officers without authority, in unnecessarily prolonging the business of the company and incurring expenses for attorneys and otherwise without authority, in voting dividends upon preferred stock as already stated, in threatening to absorb all of the assets of the company in the conduct of the business, and in issuing unauthorized dividends upon the preferred stock for the purpose of preventing any net profits or the issuance of any common stock.

It is unfortunate that a misunderstanding should have arisen over the effect of the previous decision. Respondent contends that in construing the contract the court held that it was understood between the parties that preferred stock was to be issued from time to time for a sufficient amount to meet the current expenses of the business, to take up the payments of the land as they matured, and to finally wind

up the business for which the company was incorporated, and that until such end was accomplished no common stock could issue. It is therefore claimed that appellant is not in position to insist upon the issuance of any common stock; it not appearing from the supplemental complaint that the entire amount of lands had been sold and the business of the corporation finished.

While there is some unguarded language in the former opinion which forms a fair basis for this contention, the position is altogether untenable and entirely opposed to the issues, as determined by the trial court and as reviewed and determined in the decision. After appellant assigned to respondent the option contract which he held for the land in question, a new contract was entered into by respondent for the purchase of the lands, according to which the terms of payment were that $10,000 was to be paid in cash, $10,000 to be paid November 15, 1900, $10,000 January 1, 1901, about $22,000 January 1, 1902, and the balance in annual payments terminating in 1906—total cost, $139,000; that the parties assumed that, if cash enough were furnished by Griffin to make the cash payment and the two payments maturing November 15, 1900, and January 1, 1901, $30,000 in all, it would be sufficient to conduct the business of the company until such time as the lands would be sold and means furnished to take care of the balance of the payments. As time passed, however, it became evident there was not capital enough, and by consent of all the parties the issue of preferred stock was increased to a sufficient amount to take care of the business and to make the payments until sufficient money came in from the sales of land. It is evident that the parties never agreed that preferred stock should be issued to meet any greater amount than was necessary to meet the demands of the business until payments should come in from the sales.

When the case was before us on the former appeal, it did not appear to what extent the lands had been paid for in excess of $35,000, the amount of the preferred stock then issued. It could not be determined how much preferred stock it would be necessary to issue in order to pay for the land, and consequently this court held that the judgment of the trial court was premature in directing that thirty per cent. of the common stock immediately issue to appellant. In the supplemental complaint now before us it is definitely stated that all of the lands have been paid for, that only $45,000 of preferred

stock has been issued, that there are no obligations against the company, that it has assets amounting to $250,000, and, although due demand has been made, the company refuses to issue the common stock, or any part thereof. On page 460 of 91 Minn., of the previous opinion (98 N. W. 347), this language is found: "Until the purposes for which the original contract was made and the corporation formed and completely carried out, it will not be known to a certainty whether or not there will be any net profits, and consequently any common stock to be issued." The "original contract" here referred to was that only preferred stock should be issued sufficient to meet the cash payments required, and until that contract was completely carried out it would not be known what the net profits would be. The words, "consequently any common stock to be issued," were used inadvisedly, and are misleading. There was no intention to convey the idea that it was necessary to wind up the entire business of the corporation before it could be determined whether or not appellant was entitled to the issuance of common stock.

With this explanation, we hold that it was the intention of the parties, as defined by the previous decision, that no more preferred stock should be issued than was necessary to meet the future payments on the lands and running expenses until the same were paid for, and that at the time the contract was executed it was assumed by the parties that the net profits would be the amount represented by the common stock, viz., the difference between the preferred stock already issued, $30,000, and the capital stock of $150,000.

The judgment directed by this court upon the former appeal was interlocutory only, and to the effect that the trial court retain jurisdiction of the case for the purpose of protecting and enforcing appellant's interest as might appear by supplemental complaint. It is evident that the supplemental complaint now before the court was served in pursuance of the judgment so ordered, and it is in no sense the commencement of a new action. The trial court has never lost jurisdiction of the parties, nor of the subject-matter of the action. It was so decided and is the law of the case. Whether the facts set forth in the complaint are sufficient to justify the trial court in appointing a receiver for the purpose of carrying into effect its fur-

100 M.—17

ther orders or judgments we need not decide. That, in the first instance, is a matter addressed to the discretion of the trial court; but we do hold that the court, having jurisdiction of the subject-matter and parties, has the power to take such steps as may be necessary to enforce its decree. It was so held on the former appeal. The questions here involved require the construction of a contract executed between the company and a citizen of this state, with reference to property wholly within its borders. Under such circumstances, the courts of this state are not restrained by any rule of comity from assuming jurisdiction. Guilford v. Western Union Tel. Co., 59 Minn. 332, 61 N. W. 324, 50 Am. St. 407.

Order reversed.