# CHARLES A. GEDDES v. JACOB VAN RHEE and Another.[1]

July 24, 1914.

Nos. 18,739—(159).

**Secret profits — instruction erroneous.**

Instruction in an action to recover secret profits, claimed to have been realized by defendants in the purchase of land for plaintiff as his agents *held* prejudicially erroneous as, among other things, centering the jury's attention upon a single detail of the transaction, thus obscuring the real issues, and likewise as, in effect, ignoring plaintiff's evidence.

Action in the district court for Mille Lacs county to recover $1,-000. The case was tried before Roeser, J., and a jury which returned a verdict in favor of defendants. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*E. L. McMillan,* for appellant.

*J. D. Sullivan,* for respondent.

PHILIP E. BROWN, J.

Action to recover the sum of $1,000, claimed by plaintiff to have been received by defendants as secret profits growing out of the purchase of a tract of land, wherein defendants were his agents.

Two trials were had to a jury, the first resulting in a disagreement, the second in a verdict for defendants concurred in by 10 jurors. Plaintiff appealed from an order denying a new trial. His sole claim of error relates to an instruction, later to be set out, given at defendants' request. Its bearing on the case necessitates an understanding of the issues and their development on the trial. In January, 1912, plaintiff, a South Dakota farmer, came to Milaca to purchase land. He there met defendants, who were land agents with whom he had no previous acquaintance. They interested him in the purchase of a certain quarter section belonging to one Beaver, who, prior to this time, had listed it with defendant Erickson, but

[1] Reported in 148 N. W. 549.

the latter's authority had terminated on January 1, 1912. Plaintiff claimed defendants advised him that they believed the land could be purchased for about $30 per acre, and agreed to buy it for him at such price or for as much less as possible, he to pay therefor not to exceed $4,800, which amount was to include one dollar an acre as a commission. Defendants denied this agreement, claiming, substantially as their counsel puts it, that they acted as Beaver's agents, if agents for anyone, but that in fact they did not act as agents for either, but as middlemen. After the preliminary conversation between the parties in these regards, whatever it was, defendant Erickson, on January 17, 1912, prepared a writing, purporting to be an agreement between Beaver and plaintiff, wherein the former, in consideration of $4,800, agreed to deliver to the latter the quarter section of land referred to. The instrument recited the deposit by plaintiff of $500 in bank as earnest money and part payment, to be applied on the land "as soon as the abstracts have been brought to date and the papers presented to the party of the second part as per agreement." Plaintiff therein also undertook to pay $1,500 more on or before March 10, 1912, and to give a mortgage back on the land for the balance of the consideration. The writing contained other stipulations not here material. It was signed "C. M. Beaver by C. E. Erickson, His Agent," and by plaintiff, who thereupon made the stipulated deposit. Then, or shortly thereafter, defendants agreed together to obtain the land as cheap as possible from Beaver, and thus make a large profit from plaintiff. Pursuant thereto defendant Van Rhee interviewed Beaver, advising him that possibly he had a purchaser for the land, but not mentioning plaintiff or any dealings with him, and obtained an executory contract, with himself as vendee, whereby Beaver sold him the land for $3,800, of which $50 was payable in cash, $1,250 before March 1, 1912, and a mortgage for $2,500. Thereafter Van Rhee, after making the stipulated payments to Beaver, induced him to execute a deed of the land to plaintiff, showing a consideration of $4,800, claiming to Beaver that plaintiff preferred to have the consideration stated at that amount. Later plaintiff accepted this deed at defendants' instance, paying $1,500 more and executing one mortgage to Beaver

for $2,500 and one to Van Rhee for $300; but, according to plaintiff's testimony, he was in no wise informed of Van Rhee's purchase.

The court instructed the jury as to the issues and claims, advising them that there was but one question for their determination, namely, whether defendants were plaintiff's agents to purchase the land, and if so plaintiff should recover; which was correct, but, on the other hand, if "defendants were not employed as the agents of plaintiff but were acting as middlemen or independently for the profit in the transaction, then they owed [plaintiff] no duty to disclose the price they paid, and had a right to buy this land as cheap as they could and [to] sell it for as much as they could," in which event defendants should have a verdict. Later, however, at the close of the instructions, the court charged:

"The defendants have asked me to read to you certain requests which they have made, and as they represent the law correctly I will do so.

"First request: The original contract between plaintiff Geddes and the defendant Erickson is in writing and speaks for itself. In this contract Erickson assumes to act for Beaver, the owner of the land, and not as agent for plaintiff Geddes. The recitals in this contract are not impeached in any way, and if the jury believe that the deal for this land was carried out pursuant to this written contract, plaintiff Geddes would not be in a position to complain no matter how much profit the defendants made on the deal."

Plaintiff thereupon took exception thereto, but noted no other. This raises the single question in the case.

We are unable to agree with defendants in their contention that this instruction was correct. The court refers to the contract as being between plaintiff and defendant Erickson, when the parties named therein were plaintiff and Beaver. Furthermore, unless plaintiff's proofs are ignored, its recitals were thereby impeached; and neither party to this action claimed "the deal for this land was carried out pursuant to this contract." Plaintiff's cause of action was not predicated upon its breach, but upon the alleged oral agreement of defendants to act as his agents in the land purchase; nor do de-

fendants claim they were acting for Beaver, and such was not the fact. Their real contention was that they were acting independently of both plaintiff and Beaver. Therefore whether Erickson bound himself by the contract is irrelevant. The main fault with the instruction consists in centering the jury's attention upon a mere detail, thereby giving it undue prominence, and thus obscuring the questions really involved; which, on principle, embraces the same error as when a court singles out particular witnesses and charges as to their credibility. 3 Dunnell, Minn. Dig. § 9787. The testimony on the material question was sharply conflicting, and the instruction must be considered not only in connection with the rest of the charge as a whole, but also with reference to the order in which it was given and what inferences the jury were likely to draw from it. Taubert v. Taubert, 103 Minn. 247, 251, 114 N. W. 763. It was prejudicially erroneous.

This disposes of this appeal, but by way of caution, in view of a new trial, it is advisable to say that under defendants' theory of the case, their claim as to being "middlemen" in this transaction is untenable. Such status exists where one, not having undertaken to act as agent for either party or to exercise for either his skill, knowledge or influence, merely brings them together to deal for themselves, he standing indifferent between them. Mechem, Agency, § 973. The relation is a difficult one. Clearly defendants wholly failed to show the necessary component of the bringing of Beaver and plaintiff together to deal for themselves. In fact their efforts were directed towards keeping them apart.

Order reversed.