## P. M. OLIVE v. DONALD W. TAYLOR AND OTHERS.[1]

January 16, 1931.

No. 28,052.

*Manahan, Hoogesteger & Manahan,* for appellant.

*Orr, Stark, Kidder & Freeman,* for respondents Taylor and Egeland.

*Keyes, Pardee & Solether,* for respondents Gurney and Whitman.

STONE, J.

After an adverse decision and a denial of his motion for new trial, plaintiff appeals from the judgment.

The Interstate Evangelistic Association (hereinafter called the association) is a Minnesota corporation organized for religious activities. Plaintiff was appointed its receiver January 14, 1928.

[1]Reported in 234 N. W. 466.

In that capacity he sues defendants Donald W. Taylor and William Egeland (their wives being joined) for the rescission of a contract for the exchange of real estate. Defendants Whitman and Gurney are joined as defendants because of their participation in the transaction. Whitman, during all times in question, was president of the association. The management apparently was pretty much left to him. Gurney was its secretary, and both he and Whitman were members of its governing board of trustees. In 1923 one James B. Lamson, a Big Stone county farmer, had become so much interested in the association and its work that he proposed to donate to it $15,000 of the value of his half section farm, which he then considered worth $22,400. His donation was first effectuated by three so-called trust deeds or agreements, but he finally conveyed the farm to the association by absolute and unconditioned deed. For the $7,400 of the supposed value of the farm in excess of his intended donation of $15,000 he took back a note and mortgage. The latter he had discharged of record before the transaction now under attack. It was the intention that the association should have full power of disposition of the farm. In the event of a sale of the land, the reservations in favor of Lamson, the donor, were to apply to the proceeds. None of these trust deeds or agreements were placed of record. The title remained in the association until conveyed to Edwin M. Parish in performance of the contract of exchange now sought to be rescinded.

That transaction was closed June 17, 1926, when defendants Taylor and Egeland took a deed of the farm to Parish as their nominee, on their own part giving to the association, and the association accepting, an executory contract (dated June 1, 1926) for the conveyance of a large St. Paul apartment house property. By the latter contract the association in terms purchased the apartment house at a stated price of $96,800. A down payment of $20,000 was acknowledged. That payment was made by the association's conveyance of the Lamson farm to Parish. The balance of the stated purchase price was made payable, with interest, in monthly instalments of $683.33. Plaintiff claims to have rescinded the trans-

action by his own act and now seeks a decree for the restoration of the status quo ante. Taylor and Egeland having put title to the farm beyond their control and the association having lost title to the apartment house property by the cancelation (hereafter referred to) of the contract, what plaintiff really seeks is a money judgment for the value of the farm. The ground upon which relief · was asked is fraud. It was negatived as to all the defendants by the decision below.

Before proceeding we should observe, in view of some of the argument, that we cannot now consider the rights or remedies of Lamson, whatever they may be. Plaintiff sues in the right of the association and not in that of Lamson, who is not a party. To the extent that he is or may be a creditor of the association, and not otherwise, plaintiff as its receiver may represent Lamson. He cannot enforce any claim of Lamson's otherwise, and in this suit he must stand or fall with the cause of action of the association, if any.

The theory for plaintiff seems to be that there was a conspiracy to defraud the association, but the findings acquitting defendants of that charge are well supported by the record. Taylor and Egeland had no knowledge of Lamson's reserved rights as against the association. They had a right to deal with the association as the absolute owner of the farm, and they did so. They made no misrepresentations of their own property. Neither had they any participation in the alleged dual agency, much denounced by plaintiff, of certain other participants in the transaction.

■ Counsel for plaintiff properly regard their action as one for rescission. Putting all else aside, it is difficult to perceive any basis for it after the contract of Taylor and Egeland to convey the apartment house property was canceled by notice (under G. S. 1923, § 9576, as amended, 2 Mason, 1927, id.) as it was in December, 1926. The association had gone into possession in June of that year. The payment due November 1 was not made, and notice of cancelation was given immediately. December 10 the association, acting through its president, Whitman, acquiesced in the cancelation and surrendered possession to Taylor and Egeland. They took back

the property and later disposed of it as their own. So, by the unequivocal action of the parties themselves and particularly that of the association, the statutory cancelation by notice became an accomplished fact. ˙The association acquiesced in the cancelation and effectuated it by purposeful surrender of possession. Taylor and ˙Egeland, in consequence of that action, took over and disposed of the property as their own to a third party. Hence a plain estoppel prevents plaintiff, standing in the shoes of the association, from now questioning the cancelation on the ground that there was an inadequate payment of the mortgage registration tax on the contract. Compare State Bank v. Sylte, 162 Minn. 72, 202 N. W. 70, and Blythe v. Kujawa, 177 Minn. 79, 224 N. W. 464.

■ The contract having been canceled pursuant to statute, there remains nothing to rescind. Even the action for damages for deceit is gone under the rule of Olson v. N. P. Ry. Co. 126 Minn. 229, 148 N. W. 67, L. R. A. 1915F, 962, reviewed and reaffirmed in West v. Walker, 181 Minn. 169, 231 N. W. 826. If as suggested in ˙ the Olson case there may be under such circumstances an action for money had and received, it would depend necessarily upon the unconscionable enrichment of defendants through fraud. That element, as already indicated, is negatived by the decision below of the fact issues.

■ We now come to the alleged dual agency and pooling of commissions of which plaintiff complains. One Ayers, a real estate broker, seems to have started the thing. He interested another broker, Comstock, who brought the parties together. Taylor and Egeland paid Ayers a commission of $1,500, which we assume was for the account of himself and Comstock. The association also paid Ayers a commission of $1,000. The claim is that these agents "pooled" their commissions and bribed Whitman and Gurney, president and secretary of· the association, by paying them each $400. There again the findings are against plaintiff, implicitly if not expressly. Whitman did get $350 or $400 from Ayers, but he did not profit by it at all. He turned all he got over to the association in honestly· avowed reduction of the commission it was paying and

which from the first apparently it intended to pay. Gurney, the unsalaried secretary of the association, was himself a realtor. Openly and from the first he insisted that because of the work he was doing on behalf of the association in consummating the deal he would be entitled to and would insist upon a commission. He dealt openly and above board, and the association paid its share of the commission with knowledge of all the facts. On the other hand, Taylor and Egeland had no knowledge of Whitman's and Gurney's participation in the commission and so are under no responsibility resulting therefrom. Whatever the rights of the association against Whitman and Gurney may have been or whatever they remain, Taylor and Egeland are beyond reach of legal condemnation or adverse judgment because of the alleged dual agency. They had nothing to do with it; they did not even know about it. So, at least, the case stands on the evidence and decision before us.

Ayers was considered below to have been a mere middleman or broker in the strict sense. Although he had much to do in the negotiations, we are not at liberty, on this record, to disturb the conclusion of the learned trial judge. That view of the facts is not "untenable" as it was in Geddes v. VanRhee, 126 Minn. 517, 520, 148 N. W. 549. If there was a dual agency, it was not "instigated" by the party against whom relief is sought as was the case in Olson v. Pettibone, 168 Minn. 414, 210 N. W. 149, 48 A. L. R. 913. To whatever extent the agency of Ayers was dual and his position and obligations other than those of a mere broker, the association was held below, and the evidence was open to that conclusion, to have countenanced it. That being the case, plaintiff cannot now complain. 1 Dunnell, Minn. Dig. (2 ed.) § 1146.

That the transaction was disastrous for plaintiff is not enough to entitle it to relief. We cannot retry the facts. That is not our function. The record is found to sustain the judgment in fact and law, and that ends the matter.

Judgment affirmed.