(21 Misc. Rep. 6.)

BLOOMINGDALE v. HODGES et al.

(Supreme Court, Appellate Term. July 29, 1897.)

BROKERAGE.
　　Defendants agreed that, if plaintiff would procure for them a contract with one P. to do certain work for him, they would pay plaintiff 10 per cent. upon the amount received from P. Plaintiff procured the contract for defendants, who did the work, and were paid, but refused to pay plaintiff the 10 per cent., on the ground that he stood in such a confidential relation to P. that the taking of the commission would be contrary to his duty to P. *Held*, that such claim, even if well founded, afforded no ground for defendants' refusal to pay plaintiff.

Appeal from city court of New York, general term.

Action by Lyman G. Bloomingdale against Arthur A. Hodges and others. From a judgment in favor of. plaintiff, defendant Hodges appeals. Affirmed.

Argued before McADAM and BISCHOFF, JJ.

Henry Tompkins, for appellant.
Horwitz & Hershfield, for respondent.

McADAM, J. The defendants agreed that, if Bloomingdale Bros. would procure for them a contract with F. F. Proctor to do certain decorating and other work upon the café and passages of the theater known as "Proctor's Pleasure Palace," the defendants would pay 10 per cent. of the gross amount realized from said work to Bloomingdale Bros. The latter firm thereupon introduced the defendants to Proctor, and, through its agency, a contract was made, whereby the defendants were to do the work for $6,000. The work was done, and the $6,000 paid to the defendants, who thereafter declined to pay the brokerage. The firm of Bloomingdale Bros. was dissolved, and the demand became the sole property of the plaintiff, as its successor; and, as such, he brought the action to recover $600. The facts stated are substantially conceded, and the defense proceeded on the ground that the relations between Bloomingdale Bros. and Proctor were of a confidential character; that that firm was employed by him to obtain estimates for the work; that the taking of a percentage on the job from the defendants would be contrary to the duty owing by the Bloomingdales to Proctor, and the agreement therefor was, in consequence, illegal and unenforceable. If the objection had been made by Proctor, the party alleged to have been injured, it would have come with better grace. But there was no complaint from him, and, on the evidence, there could not have been any, for Bloomingdale Bros. were not his agents or employés in the transaction. They contemplated doing the work themselves, and finally concluded to allow the defendants to do it under the arrangement stated. The defendants saw no impropriety in the arrangement with the Bloomingdales until they had received their $6,000 for the work, and then they determined that it would be doing a wrong to Proctor to pay the brokerage promised. If they had followed up this determination by paying the $600 demanded to Proctor, and justified it by the plea that it of right belonged to him, there might be some degree of candor, partaking of equity, if nothing more, in the defense. They did not do that, but concluded to keep the $600 to themselves, and use the alleged fraud on Proctor as the only feasible mode open to them for a justification of that course. This will not do. As a rule, "a fraud upon one does not form a claim on behalf of a stranger to the transaction, not claiming under the party defrauded. A fraud is an individual and personal thing. It is a cause of complaint to the person, only, upon whom it is committed. No other person can claim a benefit from it. A recovery by any other person is no defense to a claim by the party defrauded." Comstock v. Ames, 1 Abb. Dec., at page 415. The plaintiff's firm earned the brokerage, and no legal reason was established why it should not be paid to him, as its successor in interest. There is no merit in the exceptions.

The judgment was right, and must be affirmed, with costs.