# F. H. SORENSON v. GREYSOLON COMPANY AND OTHERS.[1]

## February 18, 1927.

## No. 25,617.

**Assignee of defaulted mortgage notes takes them subject to any existing defense.**

1. A person who takes assignments of notes secured by real estate mortgages after default had been made in the payment of an instalment of principal and interest stands in the shoes of the assignor and takes the assignments subject to any set-off or defense existing when they were made.

**Exception to rule respecting actionable misrepresentations of vendor as to value of property.**

2. The general rule that a vendor's misrepresentation of the value of his property does not give rise to a cause of action is not applicable where the misrepresentation is made by a person who stands in a fiduciary relation to the purchaser of the property and who secretly represents the vendor.

**When defrauded purchaser may recoup his damage in action by assignee of vendor's claim.**

3. If a representation concerning the value of land is made by such a person and the purchaser is ignorant of his relations with the vendor and relies upon and is influenced by his misstatements concerning value and suffers damage in consequence thereof, the purchaser may recoup his damage in an action brought against him by an assignee of the vendor's claim for the purchase price of the land.

Bills and Notes, 8 C. J. p. 478 n. 36, 40.
Fraud, 26 C. J. p. 1218 n. 1; p. 1219 n. 9.
Mortgages, 27 Cyc. p. 1324 n. 77.
Vendor and Purchaser, 39 Cyc. p. 1270 n. 80; p. 1271 n. 86 New; p. 1950 n. 49.

[1]Reported in 212 N. W. 457.

Defendants appealed from an order of the district court for St. Louis county, Fesler, J., denying their alternative motion for judgment or a new trial. Reversed.

*Courtney & Courtney* and *Thomas J. Joyce,* for appellants.

*Burdick & Campbell* and *McClearn & Gilbertson,* for respondent.

LEES, C.

Plaintiff commenced six separate actions against the Greysolon Company, joining one of its stockholders as a defendant in each action. The cases were consolidated for trial. When the defendants rested, verdicts in plaintiff's favor were directed. This is an appeal from an order denying defendants' motion for judgment or a new trial.

In August, 1922, George E. Lynott, a Duluth dealer in real estate, obtained an earnest money receipt for the purchase of 48 lots in Harrison's Division of Duluth for $48,500. According to the terms of the receipt, $9,500 was paid when it was issued; $14,000 was to be paid within 90 days, and instalment notes secured by a purchase money mortgage were to be given for $25,000. Lynott sold interests in the receipt to a number of persons who severally agreed to contribute and did contribute part of the purchase price of the lots. In December, 1922, the Greysolon Company was incorporated under the laws of this state and the lots were conveyed to the corporation. Stock was issued to Lynott and his associates in proportion to the amounts they had contributed, and Lynott was paid $9,500 and received a deed of two of the lots which were conveyed to him at cost. The money needed to make the $14,000 payment was obtained as follows: $6,500 by the sale of stock; $5,500 on a second mortgage; $1,500 on a note to Lynott; and $500 on a note to a stockholder named Albachten. For the final payment, notes aggregating $25,000 were given, secured by a first mortgage on the lots.

Those interested in the venture hoped to sell the lots at a profit, but the project was not a success. Only one lot was sold. Debts of the corporation were due and there was no money to pay them. The taxes against the lots were delinquent. The stockholders feared that they might be charged with liability to corporate creditors.

The officers and stockholders looked to Lynott to find a way out of the difficulty. He reported that the lots could be traded for 120 acres of land near Duluth, which could be divided into 24 five-acre tracts, thus giving each stockholder the privilege of exchanging five shares of stock for one of these tracts. This was at a meeting of the directors held October 25, 1923. At this meeting the president stated in substance that the Waters Company, which had the title to the land, would purchase the lots, assume and pay the entire indebtedness of the Greysolon Company and transfer to the company the land in question, subject to 24 mortgages aggregating $9,000, each mortgage to cover a unit of five acres and to be given for $375.

The minutes of the meeting show that the proposition was discussed and a resolution adopted accepting it. The resolution recites that the proposed method of clearing up the company's indebtedness is the only one available and that the 120 acre tract is worth the price to be paid therefor. On November 10, 1923, the stockholders met and ratified the action of the board of directors. In part the resolution reads as follows:

"Resolved, that the real estate holdings of this company be distributed pro rata among its stockholders; that the basis of such disposition be one five (5) acre tract of the acreage property of this company to a stockholder upon the surrender of five shares of stock, properly endorsed for transfer, and the assumption of the mortgage of $375.00 upon such tract."

The transaction was closed as follows: The Waters Company took a deed of the lots and gave a deed of the land, and assumed and agreed to pay the debts of the Greysolon Company. The Greysolon Company gave 24 notes to the Waters Company, each for $375, and as security therefor a mortgage on one of the five acre tracts. It then conveyed one of the tracts to each stockholder who surrendered five shares of his stock. Each deed contained a mortgage assumption clause.

Plaintiff is the assignee of the notes and mortgages. She brought these actions against the Greysolon Company on the notes and

against the individual defendants on the mortgage assumption clause in the deeds.

The Greysolon Company pleaded as its defense that Lynott was the managing agent of the Waters Company; that he and the company made false representations concerning the condition of the Greysolon Company's affairs and the value and salability of the Waters Company's land; that in reliance thereon the Greysolon Company took the deed of the land and executed the notes and mortgages; and that by reason of these facts the notes were without consideration.

Five of the individual defendants pleaded as their defense that the Waters Company and the Greysolon Company through their representatives and agents falsely represented (1) that the 120-acre tract of land "was well located, suitable for farming purposes, readily salable and * * * worth not less than One Hundred and Fifty Dollars ($150.00) per acre and that defendant's holdings in the Greysolon Company were of no value;" and (2) that a five-acre tract of the land would be conveyed to each defendant free from incumbrance except a mortgage of $375, which he would not have to assume. They alleged that they relied and acted on these representations and on the integrity and judgment of the representatives and agents of the two companies and did not know of the mortgage assumption clause in their deeds until after these actions were commenced. They also alleged that the two companies were managed and controlled by Lynott and that by reason of the foregoing facts defendants had been damaged in a sum in excess of $375.

The answer of one of the defendants differs in the following particulars: In addition to the foregoing, it is alleged that Lynott falsely represented that the land to be conveyed by the Waters Company was subject to an outstanding mortgage of $75 an acre, and that after the commencement of the action defendant had tendered a reconveyance of his land to the Waters Company.

Defendants introduced evidence tending to show that Lynott made the alleged representations concerning the quality and value of the land; that they were not true; that the value of the land did not

exceed $35 or $40 an acre, and that it was not mortgaged in any amount before or when it was conveyed to the Greysolon Company.

We consider first the defense to the notes in the light of the answer of the Greysolon Company and the evidence received thereunder. In seeking to enforce the notes plaintiff stands in the shoes of the Waters Company. She cannot and does not assert that she possesses the rights of a holder of a negotiable instrument purchased for value before maturity without notice of any defense thereto. We think the allegations of the pleadings and the evidence offered by the defendants, which stand uncontradicted and unexplained, would justify a jury in returning a verdict in defendants' favor if the Waters Company were the plaintiff. Lynott was an officer of both companies. The books and papers of the Greysolon Company were kept in his office. At the time of the transactions in question, his stenographer was secretary of the company. He seems to have been active in the management of the affairs of the company and to have possessed the confidence of its officers and stockholders. He represented the Waters Company in its transactions with the Greysolon Company and its stockholders. His office was its office. His relations with the Waters Company were not known to the defendants. They had reason to believe that he was looking after their interests and the interests of their company exclusively. Had they known that he occupied a position where his personal interests conflicted with those of the Greysolon Company and its stockholders, they would have been put upon their guard in acting upon his representations.

Under the circumstances, the general rule that a vendor's misrepresentation of the value of his property is mere trade talk and does not give rise to a cause of action is not applicable. Follingstad v. Syverson, 166 Minn. 457, 208 N. W. 200. As stated in Prigge v. Selz, Schwab & Co. 134 Minn. 245, 158 N. W. 975, "the excuse of interest, and of the natural disposition of men to overestimate their own property," does not comprehend a person occupying Lynott's position. The parties did not deal at arm's length. Lynott stood in a fiduciary relation to the defendants. It was his duty to act in the utmost good faith. There can be no question about the re-

sponsibility of the Waters Company for Lynott's misrepresentations. We have repeatedly held that one who accepts a contract procured by the fraud of his agent and receives the benefits thereof adopts and ratifies the instrumentalities by which such benefits were obtained. Roseberry v. Hart-Parr Co. 145 Minn. 142, 176 N. W. 175, and cases cited.

The Greysolon Company, if ignorant of the double role played by Lynott, had a right to repudiate the transaction upon the discovery of the truth. Olson v. Pettibone, 168 Minn. 414, 210 N. W. 149. To rescind, the Greysolon Company would have to return what it received from the Waters Company. The land had been conveyed to the stockholders and it was probably beyond the power of the company to reconvey to the Waters Company. It has not sought a rescission but, if the land was worth no more than $40 an acre, the jury might find that the company and its stockholders have suffered damage by reason of their reliance on Lynott's misrepresentations, and the amount of the company's damage could be set off against the amount due on the notes. The right to recoup damages can be asserted against the plaintiff, for she took the assignment of the notes and mortgages after default had been made in the payment of an instalment of the principal and interest. Plaintiff has no greater rights than the assignee of a non-negotiable instrument. She took the assignment subject to any set-off or defense existing at the time of the assignment. G. S. 1923, § 9166; Dun. Dig. § 572.

But it is urged that the proof showed that Lynott's alleged misrepresentations were confined to statements concerning the value and salability of the land. Such representations, when made by a person known to be the owner of the property offered for sale, do not constitute actionable fraud. Dun. Dig. §§ 8590 and 10060. The law properly takes notice of the natural disposition of men to overstate the worth of their property. When a buyer deals with the seller or his known agent, he deals at arm's length, but when the buyer's agent, upon whose judgment and good faith he has a right to rely, makes representations concerning the value and salability of the property, the representations, supposedly disinterested, are likely to influence the buyer in making the purchase. They carry

a weight they would not have, had it been known that the agent secretly represented the seller or was interested in the sale. Erickson v. Frazier, 169 Minn. 118, 210 N. W. 868. When such representations are made by a person in whom confidence is reposed and there is an abuse or betrayal of confidence, the law ought not to allow the seller or the unfaithful agent to escape the consequences on the plea that the buyer has no right to rely on a seller's trade talk. In such cases statements of value are material, may be relied on by the buyer, and, if they are false and fraudulent and deceive the buyer to his damage, he ought to be allowed to recover the damage either in a direct action or by way of recoupment when sued by the seller or by one standing in his shoes as does the plaintiff in the case at bar.

The rule, that if a party makes an independent investigation of the facts and relies thereon he cannot recover, is subject to the qualification that the false representation need not be the sole motive or inducement; it is enough if it has a material influence or was one of the substantial inducements. Dun. Dig. and Supps. § 3821.

Some of the defendants viewed the land. They knew where it was located and what the soil consisted of, but they did not rely exclusively upon their own knowledge and judgment. Their testimony indicates that they were largely influenced by Lynott's statements.

There can be no question about the proof of damage. In addition to having parted with their stock, the individual defendants have each become liable for the payment of $375, a liability which did not exist before they accepted their deeds. In return for their assumption of this liability, they have received five acres of land. The jury could find that the land was worth less than $200 and that, as a result of Lynott's misrepresentations, each of the individual defendants had suffered a loss of at least $175.

We think that there must be a new trial and it is so ordered.