# OLIVE M. HOYT v. KITTSON COUNTY STATE BANK.[1]

September 25, 1931.

No. 28,568.

*Paul A. Lundgren* and *Theodore Quale,* for appellant.
*A. D. Bornemann,* for respondent.

HILTON, J.

Plaintiff appeals from a judgment dismissing her action with prejudice.

[1]Reported in 238 N. W. 41.

In August, 1918, plaintiff and her then husband, who owned a quarter section of land in Kittson county, entered into a written contract to sell the land to one Bedard for $9,300, of which $300 in cash was paid. The remainder of the purchase price was to be paid by the purchaser out of "one-half of all grain to be sown and grown on said premises in each and every year hereafter and during the continuance of this contract," the proceeds thereof to be applied, first, in payment of interest, and the balance in reduction of the principal sum. Bedard was to pay the taxes and to carry certain specified insurance on the buildings, loss, if any, payable to Hoyt. The contract further provided:

"Should one-half of the crop proceeds not be sufficient to pay the interest in any one year, then the understanding is that the purchaser is all the same to pay not less than what such annual interest amounts to for the year then last past, * * * with interest on all deferred payments at the rate of six per cent per annum. * * * It being further understood and agreed that until the delivery of the one-half of the grain as aforesaid, during each and every year of this contract, the legal title to and ownership of all said grain raised during each and every year shall be and remain in first party."

Bedard became indebted to the Citizens State Bank of Hallock. He executed two mortgages upon his interest in the property as security for his obligations. These mortgages provided in effect that the intention was to mortgage to the bank all right, title, and interest which Bedard had in the premises under the contract for a deed with Hoyt, and that the mortgage should be a lien on the present interest of the mortgagor in the premises and should include any future increased interest which might accrue to him therein. The mortgage also provided that in case of default the bank was authorized to exercise all rights of Bedard under the contract for deed, in the protection of the claim and indebtedness described in the mortgage, and to execute any necessary acts in Bedard's name.

Bedard's debt to the bank was not paid; it foreclosed by advertisement and bid in the property for $1,600.92, becoming the owner thereof at the end of the redemption period, May, 1923. The premises were then leased by the Citizens bank upon a crop payment plan to one Hedlund, who was to have three-fourths of the crop and the bank one-fourth. Improvements were made on the property by the bank, and though no crop was raised in 1923, interest for that year was paid in the sum of $492.

In November, 1923, a partial consolidation was effected between this defendant and the Citizens State Bank. Under the consolidation agreement the defendant assumed all the deposit liabilities of the Citizens State Bank in return for sufficient of the assets of that bank to equal the same. The land referred to was taken over without any written transfer and was carried by the defendant as "other real estate" at a valuation of $1,600. There is nothing in the consolidation agreement whereby defendant assumed any individual liability under the contract.

The defendant continued to operate the land through the tenant, Hedlund.

From the correspondence passing between plaintiff and her husband with the Citizens bank and with the defendant, it appears that the manner and conditions of the operation of the farm were known to all parties.

A satisfactory adjustment of a dispute as to the amount of the payment to be made for 1924 operations was arrived at by the payment by defendant to Hoyt of $1,292. The crops were poor during succeeding years.

Certain letters were written by the Citizens bank to Hoyt during the years of 1922 and 1923, in one of which the intention was expressed to carry out the terms of the Bedard contract, "unless some unforeseen condition should develop." In a letter from defendant to Hoyt it was stated: "It is our intention to continue on with this contract if we can carry it through without putting in too much of the bank's money." Hoyt made no objections to these qualifying statements. The latter statement is specifically referred

to in the court's memorandum as indicating an intention other than absolutely to pay the full contract amount no matter what happened.

Hoyt died in 1926, and a local administrator of the estate was appointed in Kittson county. He accepted $301.15 as payment for 1926, being the amount available to the defendant from Hedlund for that year (one-fourth of the value of the crops raised).

The total amount of the money actually received out of the crops by the banks was much less than the amount of money they actually paid upon the contract.

This action was brought for an accounting and for a specific performance of the contract. After a trial the court found that "the evidence fails to establish plaintiff's alleged cause of action." In its memorandum the court states: "There is no evidence to the effect that defendant assumed or agreed to pay the payments of the Hoyt-Bedard contract as an individual liability" (citing Meyer v. Droegemueller, 165 Minn. 245, 206 N. W. 391). The finding had ample support in the evidence. Although the bank had the right at its election to carry out the terms of the contract and become the owner of the land, it was not required to exercise that right.

The court ordered judgment dismissing plaintiff's cause of action and awarding defendant its costs and disbursements. After this disposition of the case plaintiff moved for a new trial. Defendant's motion for leave to serve a supplemental answer was granted. This supplemental answer recited that there was served upon defendant a notice of cancelation of the contract for the sale of land, claiming default in the performance of the terms and conditions thereof. These defaults were stated in the notice to be:

"(1) Failure to pay the taxes in accordance with the terms of the contract aforementioned for the years 1921, 1923, 1924, 1925, 1926, 1927 and 1928. (2) Failure to make crop payments and payments of interest in accordance with the terms of the contract aforementioned for the years 1923, 1924, 1925, 1926, 1927 and 1928."

The supplemental answer also alleged:

"That defendant has acquiesced in said cancelation and termination of said contract and has peaceably and quietly surrendered the possession of the lands and premises covered by said contract to plaintiff; that plaintiff has taken possession of said lands and premises and is now in complete ownership and possession of the whole thereof under her claim of ownership thereto."

It will be noted that the grounds of default set forth in the notice of cancelation are the very items plaintiff is endeavoring to collect in this action.

After hearing plaintiff's motion and on May 8, 1929, the court made an order denying it and directed that plaintiff, within 20 days, serve reply to the supplemental answer. Plaintiff, who was vendor, appealed from the order denying her motion for a new trial and from the order granting defendant's motion to file a supplemental answer. The decision on that appeal is reported in 180 Minn. 93, 230 N. W. 269. The order denying a new trial was affirmed, and the appeal was otherwise dismissed for reasons stated in the opinion.

Thereafter plaintiff filed a demurrer to defendant's supplemental answer, on the ground that it did not state facts sufficient to constitute a defense or counterclaim to plaintiff's complaint. The demurrer of course admits the facts set forth in that answer. On June 6, 1930, an order was entered overruling the demurrer and granting plaintiff 20 days to reply. No reply was served. Judgment was duly entered dismissing plaintiff's action with prejudice. From this judgment this appeal was taken, and the printed record on the previous appeal [No. 27,588] was permitted to be used herein.

The question remains whether plaintiff is entitled to recover anything. She claims that the mortgage and the foreclosure operated as an assignment of the contract. Even if it did, she cannot prevail. In the Meyer case, 165 Minn. 245, 246, 206 N. W. 391, 392, it is said:

"An assignment by the vendee of a contract for the purchase of real estate creates a privity of estate between the assignee and the

original vendor, but not a privity of contract." Pratt v. Martig, 182 Minn. 250, 234 N. W. 464.

Plaintiff, having canceled the contract, could not successfully maintain an action for specific performance. She however claims that as the original contract provided for the delivery of one-half of the grain each year and that the legal title and ownership of all the grain should remain in the vendor, she has a right to recover from defendant for the conversion of said grain. Upon the facts disclosed by the record this position is not tenable.

Plaintiff has recovered the land with the consent and acquiescence of the defendant and is in sole and exclusive possession thereof. More than half of the value of the crops raised has been paid on the contract. Such payments may properly be retained. Plaintiff cannot recover anything further. Warren v. Ward, 91 Minn. 254, 97 N. W. 886; Smith v. Dristig, 176 Minn. 601, 224 N. W. 157.

Judgment affirmed.