CLARENCE McKAY v. GEORGE W. RYAN AND ANOTHER.[1]

February 10, 1939.

No. 31,953.

[1]Reported in 284 N. W. 57.

*Leslie S. High,* for appellant.

*John T. Galarneault,* for respondents.

LORING, JUSTICE.

In a suit by the vendee to recover back his initial payment of $500 and for $100 damages for breach of a contract of sale covering real and personal property, based upon an alleged violation of the contract by the vendor, the defendants prevailed, and the plaintiff comes here on appeal from an order denying his motion for a new trial.

October 16, 1937, plaintiff entered into a contract (sometimes herein referred to as exhibit A) with the defendants whereby he agreed to purchase for the sum of $7,500:

"Lots 24, 23, 22, 21, 20, 19, 18, 25, and 25 feet of North ½ of lot #15, and buildings and all equipment except rugs and children's playhouse, desk, chair and table and rocking chair now in lodge. Studebaker truck, bedding, cabin equipment and all equipment and boats now on property or in buildings covered by this sale."

Five hundred dollars was paid at the execution of the contract, which provided that $3,500 should be paid—

"on delivery of contract for deed and Thirty-five hundred in monthly payments of Fifty dollars per month including interest at 6%. First payment $50.00 to be paid Nov. 1, 1937. Possession Oct. 22, 1937."

The contract was very crudely drawn by plaintiff on a printed blank denominated "EARNEST MONEY CONTRACT OF SALE." Immediately following the provisions for payment which we have quoted was a printed provision which read as follows:

"payable on or before the dates as named above, or as soon thereafter as a Warranty Deed conveying a good title to said land is tendered, time being considered of the essence of this contract."

The printed part of the contract further provided for the vendor to furnish a complete abstract of title, after which the vendee was to have 20 days for its examination. There was written into the contract a provision for the prorating of taxes and—

"If licenses are denied, this contract is void. This contract is an option to purchase property and buildings west of highway included in present contract for deed for $7,500 until Oct. 1, 1938."

It was further provided in the printed part of the contract (figures and amounts inserted with a pen) that if title was not made good within 60 days the agreement should be void and the $500 refunded, but that if the title was good in the name of the vendor or was made good within 60 days, and the vendee refused to accept the same, the $500 should be forfeited to the vendor. Then followed a printed provision:

"But it is agreed and understood by all parties to this agreement that said forfeiture shall in no way affect the right of either party to enforce the specific performance of this contract. I hereby agree to purchase the said property for the price and upon the terms above mentioned, and also agree to the conditions of forfeiture and all other conditions therein expressed."

The contract was signed by both parties.

No question was ever raised as to the inadequacy of the description of the property, and the lots were identified by evidence *dehors* the written contract as being in Sheshebe Point, Third Division, in Aitkin county, Minnesota. For convenience the trial court divided the real estate referred to into five parcels.

Parcel No. 1 was the single lot 25 in block 21.

Parcel No. 2 was lot 18 in block 19, the northerly half of lot 15 in block 20, and lots 19, 23, and 24 in block 21.

Parcel No. 3 was the southerly half of lot 15 and all of lots 18, 19, and 20 in block 20.

Parcel No. 4 was lots 16 and 17 in block 20.

Parcel No. 5 was lots 20, 21, and 22 in block 21.

Parcels Nos. 1, 2, and 5 were covered by the contract of sale and were referred to as "The Retreat." That property was east of the road referred to in the contract. Parcels Nos. 3 and 4 were those covered by the option, were west of the road, and known as "The Pavilion." The court found that on October 16, 1937, the title to parcel No. 1 was in the defendant George W. Ryan of record and in fact. It found further that the title to parcels Nos. 2 and 3 appeared of record in the name of Lake Shore Improvement Company, a corporation, subject to a mortgage to Stella C. Tingdale, not satisfied of record.

It further found that title to parcels Nos. 4 and 5 appeared of record in Eric A. Lindgren and Ida S. Lindgren, his wife, as joint tenants.

The court found that there was also in effect and of record a contract for deed from Bear Ridge Land Company, a corporation, as vendor, to defendants, George W. Ryan and Jay B. Ryan, and Lumena Sampson, as vendees, dated July 18, 1936, evidencing the sale of parcels Nos. 2 to 5, inclusive, by the vendors to the vendees and its agreement to convey same to them, subject to certain coal, oil, and mineral reservations of record, and to racial restrictions, upon payment by the vendees to the vendor of the sum of $7,000 in accordance with the terms of said contract which referred to certain unrecorded contracts running to the vendor corporation from

Eric A. Lindgren and wife and Charles L. Golden and his wife, and from said Lake Shore Improvement Company. Lumena Sampson had assigned her interest as vendee to the Ryans, who the court found were not and had not been in default in any of the provisions of the contract.

The court found that the premises and property intended to be described and covered by the contract were parcels Nos. 1, 2, and 5, and certain personal property in part owned by the Ryans and unencumbered, and in part covered by the contract from the Bear Ridge Land Company to the Ryans. The court found that it was intended by the terms of the contract to grant an option to the plaintiff to purchase parcels Nos. 3 and 4 at the price stated until October 1, 1938. It found that:

"* * * it was known to and acquiesced in by plaintiff that defendants' title to all of said premises, except parcel No. 1, was their equitable title as vendees in said Bear Ridge Land Company contract, and that defendants did not contemplate acquiring a deed of any of said premises from said Bear Ridge Land Company before the making of the $3,500 payment provided for in Exhibit 'A' [the contract of sale to plaintiff] ; and it was intended by the parties that the title to be conveyed pursuant to Exhibit 'A' was to be subject to the reservations and restrictions mentioned in said Bear Ridge Land Company contract."

Abstracts of title were furnished to plaintiff except as to parcel No. 1, the fee title to which was examined from the record. These abstracts and the records were examined by the plaintiff's attorney, and there followed a period of correspondence between him and George W. Ryan and others, the attorney coöperating with the defendants and they inquiring just what was needed to make the title acceptable. The result of this correspondence and these negotiations was that on December 9, 1937, Eric A. Lindgren and his wife became the owners in fee simple of the record title to parcels Nos. 2 to 5, inclusive, and of the personal property mentioned in the Bear Ridge Land Company contract with the defendants. Thereby all other interests were eliminated, the reservations and racial

restrictions in the Bear Ridge contract alone surviving. A contract for deed from the Lindgrens to the defendants was executed, delivered, and recorded covering parcels Nos. 2 to 5, inclusive, and also the personal property on the same terms as those appearing in the Bear Ridge Land Company contract, the purchase price being $7,000 of which $3,081.28 was acknowledged as paid and the balance, $3,918.72, was to be paid "in installments of $50.00 or more on or before January 1, 1938, and the first day of each month thereafter" until paid in full with interest at six per cent. The court found that the title to the premises under contract was thereby made acceptable to the plaintiff and his attorney except that on December 6, 1937, the plaintiff's attorney wrote a letter to the agents representing the Bear Ridge Land Company and to Lindgren in which he said:

"It is my opinion that it is desirable that Eric A. Lindgren and Ida S. Lindgren, his wife, convey the properties involved by proper deed to George W. Ryan and Jay B. Ryan. * * * If this is done, I see no need for placing of record either the contract for deed from" the Lindgrens to the Bear Ridge Land Company "or the assignment of contract" from that company to the Lindgrens.

He communicated the contents of the letter to the defendants. Defendants then indicated to the plaintiff's attorney that obtaining a deed from the Lindgrens was not within the contemplation of their contract with the plaintiff as they construed it. Thereupon, plaintiff's attorney on December 11, 1937, notified the defendants that if he was to accept a contract for deed and make further payment under the contract for sale defendants were to secure the deed from the Lindgrens, vesting in the defendants good title to parcels Nos. 2 and 5. In the same communication he submitted a new offer to take an assignment from defendants of their Lindgren contract which covered "The Pavilion" property (parcels 3 and 4) as well as "The Retreat" and to pay defendants $4,500 in cash over and above the $500 already paid as soon as the transaction could be closed and not later than December 20, 1937. The court found that the letter of December 11 did not allow the defendants a reasonable

time within which to make their title acceptable to the plaintiff nor was the new proposal acceptable to them. The defendants have made no further payment, and December 20, 1937, the plaintiff took the position that the contract of sale was no longer in effect except as evidence of defendants' obligation to refund the $500 to plaintiff. The court found that no tender of a contract for deed pursuant to exhibit A would have been accepted by the plaintiff except upon compliance with the requirement of the letter of December 11 within the time therein and by exhibit A contemplated. The court concluded that the plaintiff take nothing by his action and ordered judgment accordingly.

It is the plaintiff's contention that there is no evidence to support the court's finding that the plaintiff knew of and acquiesced in the character of the defendants' title to the premises or the finding that the defendants did not contemplate the acquiring of a deed to any of the premises before the making of the $3,500 payment provided for in exhibit A, and he stands squarely upon the provisions in the printed part of the contract which provides:

"And it is agreed that if the title to said premises is not good and cannot be made good within 60 days from date hereof, this agreement shall be void, and the above $500 refunded."

The language of the contract itself aside, there is ample support in the testimony of George W. Ryan and of his wife and daughter-in-law for the finding of the court that the condition of the defendants' title was well known to and acquiesced in by the plaintiff and that he was to get a contract for deed the same as the defendants had to the property. This of course justifies the finding that the defendants did not contemplate having a deed to the property at the time they made the contract. Under our holding in Paynesville Land Co. v. Grabow, 160 Minn. 414, 200 N. W. 481, a contract from the Lindgrens, who were owners of the fee title, justified the defendants in entering into a contract for deed with the plaintiff. The plaintiff raises the point that the amount due the Lindgrens was greater than the deferred monthly payments which would accrue to the defendants under exhibit A, and would

extend for a longer period of time. However, there was an "on or before" privilege in the contract with the Lindgrens, which contract covered property in addition to that which was the subject of exhibit A, and there is no showing that the defendants were financially irresponsible. In fact, if the $3,500 payment due "on delivery of contract for deed" be included, they were to receive far more from the plaintiff than their entire debt on the whole property to the Lindgrens.

We come then to the purely technical point that the printed part of the contract provided:

"If the title to said properties is not good and cannot be made good within sixty days from date hereof, this agreement shall be void, and the above $500 refunded."

Upon this point the trial court took the position that the technical objection of plaintiff that defendant did not have a deed to the property within 60 days was waived, for the reason that the objection was not made within time to afford the defendants a reasonable opportunity to correct the defect within the time limited by the contract. We think the trial court was justified in so holding. John v. Timm, 153 Minn. 401, 406, 190 N. W. 890. It is true that on December 6 plaintiff's counsel wrote Tingdale Brothers, Inc. at Minneapolis, who acted for the Lindgrens and the Bear Ridge Land Company, sending a copy to the defendants, stating that it was desirable to have a deed from the Lindgrens to the Ryans, but this letter did not make a direct demand that such should be done, and it seemed to take the position that it was desirable so as to avoid the necessity for placing certain other documents of record. It might be fairly so construed by the defendants, and so whatever demand the plaintiff relies on must be based upon the letter of December 11, which was written from Duluth only four days prior to the expiration of the 60-day period. Obviously this was not within such a time as would afford the defendants a reasonable opportunity to comply with the demand. As said in John v. Timm [153 Minn. 406]: "Objections to the title not so raised are waived."

The foregoing also disposes of the objections to the title to the personal property.

The order appealed from is affirmed.