MERLE E. MAGEE AND ANOTHER v. A. ODDEN, d. b. a.
A. ODDEN COMPANY, AND ANOTHER.
ARTHUR W. JAMESON, APPELLANT.[1]

October 19, 1945.

No. 34,047.

[1]Reported in 20 N. W. (2d) 87.

*Oscar G. Haugland,* for appellant.
*Fred Sorenson,* for respondents. .

JULIUS J. OLSON, JUSTICE.

Defendant Jameson appeals from a judgment and also from an order denying an alternative motion made by both defendants to amend the original findings or for a new trial. Insofar as the order denies amendments to the findings, it is of course not appealable.

The action was brought against both defendants and is founded upon fraud and deceit claimed to have been practiced directly and personally by Jameson in the sale of plaintiffs' property. Liability as to defendant Odden was predicated upon the theory that Jameson was acting for him in making this deal. The facts are in substance these: Plaintiffs, during all the times here material, were the owners of a modest home in Minneapolis. Desiring to sell the same, they listed their property with defendant Odden, a real estate broker. The stated selling price was $4,200, commission five per cent. Jameson, acting for and in Odden's name pursuant to the listing agreement, promptly went to work on this deal.

Certain dates and events may be helpful to an understanding of Jameson's purposes and methods to accomplish his ends.

On March 10, 1944, plaintiffs listed their property for sale with Odden. On the 20th, Jameson quit his employment with Odden but said nothing to plaintiffs about it. On March 24, he entered into a purchase agreement with Florence P. Hallberg under the terms of which she agreed to pay $4,000 for the property. On March 25, he signed an earnest money contract of sale reciting that he, using the name James W. Arthur, had paid $25 to apply upon the purchase money, the total price being given as $3,800. On March 29, plaintiffs' signatures thereto were obtained. Then, on April 5, he signed a purchase agreement with Miss Hallberg under the terms of which she agreed to pay $3,850. Under the signed name James W. Arthur, the following words were typed: "Purchaser under Earnest money contract from Bessie L. Magee & Merle E. Magee." On April 18, the sale to Miss Hallberg was finally consummated. Jameson then issued his check payable to A. Odden Company for $165, that representing the amount he computed to be the balance of the commission. Because of the outstanding contract of James W. Arthur, plaintiffs' attorney insisted that an appropriate release of his interest should be had. Jameson informed plaintiffs that Arthur was not available to sign the release, as he had gone to Alaska. Accordingly, the $165 check came into the possession of plaintiffs' attorney and has been held by him awaiting the release from the alleged Arthur. At the trial, however, it developed that all these deals by him in the name of Arthur were in fact his own. As a matter of fact, Jameson obtained $3,850 from Miss Hallberg for the property although he told plaintiffs it was sold for only $3,800. Jameson pocketed the extra $50 and said nothing to plaintiffs about it.

Plaintiffs did not learn of the actual sale price until after the Hallberg deal was consummated. Odden had no knowledge of the scheme concocted and put into execution by Jameson. As far as plaintiffs knew or were informed, Jameson continued to act as Odden's agent in the completion of this transaction.

The court found that Jameson knew when he made these representations that they were false and untrue and were made for the purpose of having plaintiffs act thereon; that they did so act, believing them to be true. Since Jameson had acted for and in the name of Odden, the court also found that neither Odden nor Jameson was entitled to any commission; that Jameson, having come into possession of $215 ($165 commission and the extra $50 from Miss Hallberg), "which in good conscience belongs to the plaintiffs," they should recover that amount from him, but exonerated Odden from liability. Judgment was then entered, and this appeal followed. There is no appeal by Odden, nor is there any cross-appeal by plaintiffs.

■ Appellant claims that "Upon termination of an agency in good faith, the agent is free to operate on his own behalf, and may do so to the detriment of his former principal." He argues that, since after March 20 he was not in Odden's service, his acts and conduct thereafter had no relation to his former employment. The court found that the employment was terminated on that day, but that he (Jameson) "was permitted to act as Odden's agent in the completion of this deal." This is challenged as being without evidentiary support. In the contract of March 24, signed by Jameson under the name James W. Arthur as purchaser, we find that he, "through A. Odden Company, our authorized agent, sold and agreed to convey to said James W. Arthur" or his assignee the involved premises. Receipt of $25 earnest money is recited. The contract of March 25 recites the same quoted language. In addition, that instrument contains this statement, written in pen and ink: "Loan expense to be paid by A. Odden & Co." The contract of March 29 recites that James W. Arthur had paid $25 to apply upon the purchase money. This is the instrument plaintiffs executed. There we find this significant statement: "It is understood and agreed that A. Odden Company will bear finance cost of securing new mortgage on above described premises," and that "the delivery of all papers shall be made at the office of A. Odden & Co." As we have seen, at the time of closing the transaction with plaintiffs on

April 18, under his true name, Jameson issued the $165 check payable to A. Odden Company, this representing the balance he computed the commission on this deal to be. He never disclosed to plaintiffs that his services for the Odden company had ceased. By his acts and conduct as disclosed by the recited facts, he obviously led them to believe that the sale was made in compliance with the original listing, except that the price was finally reduced to $3,800 instead of $4,200 as originally listed. Nor did he ever disclose to plaintiffs that he had entered into a contract as the owners' agent with Miss Hallberg on March 24 for the purchase price of $4,000, upon which she made a down payment of $100. Instead, he reported the sale to be at $3,800, although in fact he sold it for $3,850, secretly pocketing the difference of $50 without disclosing the truth. That contract was made April 5. In it we find this significant statement: "It is understood and agreed that A. Odden Company is to bear the cost of finance in securing the new mortgage on above described premises."

We think the record is such as not only to support the findings of the court in this respect, but virtually to clinch its accuracy.

■ The rule to be applied in view of the recited facts is that, since fraud renders voidable everything into which it enters, the court will look through any form of instrument or proceeding in order to prevent a party from profiting by his fraud; that the court will not take a single step to save harmless the party who is guilty of fraud; and that no right can arise out of a fraudulent act. 3 Dunnell, Dig. & Supp. § 3834, and cases under notes 99 and 1. We think the court's language in Bloomingdale v. Hodges, 21 Misc. 6, 7, 46 N. Y. S. 859, 860, fits our case:

"* * * A fraud is an individual and personal thing. It is a cause of complaint to the person, only, upon whom it is committed. No other person can claim a benefit from it. A recovery by any other person is no defense to a claim by the party defrauded."

■ So, also, does our language in Proper v. Proper, 183 Minn. 481, 484-485, 237 N. W. 178, 179:

"* * * The law ordinarily leaves perpetrators of fraud in any predicament resulting from their own machinations."

■ In Tilleny v. Wolverton, 46 Minn. 256, 257, 48 N. W. 908, we held that, where an agent sells to himself without the knowledge of the owner, such sale is *prima facie* voidable, the court saying:

"It is an inflexible rule, founded on public policy, that such a transaction shall not be permitted to stand as against the principal, unless it appears that with full knowledge of all the facts he either previously consented to or subsequently ratified it."

*Cf.* American Security & Inv. Co. v. Penney, 129 Minn. 369, 152 N. W. 771.

■ Appellant is in no position to predicate error here on the ground that Odden was exonerated by the trial court. Justice requires that he should reap the tares by him sown. As we recently said in Doyen v. Bauer, 211 Minn. 140, 145, 300 N. W. 451, 454:

"An agent is bound to act solely for the benefit of the principal in all matters connected with the agency. His first duty therefore is loyalty to his principal. Hence an agent is not permitted to put himself in an antagonistic relation to his principal and is required to exercise the utmost good faith toward his principal in all their dealings. As a matter of good faith, it is the duty of an agent to communicate to his principal all facts of which he has knowledge which might affect the principal's rights or interests. And, since the agent is under the duty to act solely for the benefit of the principal, all profits made in the course of the agency belong to the principal whether they are the fruits of performance or violation of the agent's duty."

Obviously, the result reached by the trial court is right; hence the judgment must be and is affirmed.