# BOULEVARD PLAZA CORPORATION v. KENNETH R. CAMPBELL.

94 N. W. (2d) 273.

January 2, 1959—No. 37,571.

*Silver, Goff, Ryan, Wallace & Newcome* and *Allen H. Aaron,* for appellant.

*Daniel F. Foley,* for respondent.

NELSON, JUSTICE.

This appeal is from a judgment entered pursuant to findings in favor of defendant after denial of plaintiff's motion to amend the findings. There was no motion for a new trial.

Defendant, Kenneth R. Campbell, as vendor, and one Atwood Cranston, as vendee, entered into a purchase agreement dated March 10, 1953, for the sale of a tract of land located in Hennepin County, said tract being a part of outlot 15, as shown on the plat of Wayzata. By the terms thereof, the purchase price of $4,500 was to be paid as follows: $500 down, $1,000 payable on or before May 1, 1953, and the balance of $3,000 payable by executing a purchase money first mortgage payable $500 plus interest semiannually commencing November 1, 1953, final payment to become due May 1, 1956.

The vendor warranted:

"* * * that the premises to be conveyed are zoned commercial and that a building permit will be granted upon proper application for the construction of a retail store or restaurant building thereon; also there shall be no building or other restrictions against same."

The vendor agreed to pay all annual taxes and assessments then due, and the purchaser agreed to accept a deed to the premises subject to annual taxes and assessments payable in 1954.

It was further agreed:

"Vendor shall furnish within 10 days from the date hereof an Abstract of Title, certified to date, or an owner's duplicate Torrens Certificate of Registered Title, showing good and marketable title in Vendor. Vendee shall have the term of 40 days after the receipt of same in which to examine the same, but in no case later than May 1st, 1953. If title shall

be not marketable and Vendee shall so notify Vendor by written notice within the period above specified for Vendee's examination, then Vendor shall have the term of an additional 10 days after receipt of said notice, but in no case later than May 1st, 1953, in which to make the same marketable at his own expense. If title shall be not marketable or not so made within the granted term, then this agreement may, at purchaser's option, be null and void and the above receipted earnest money shall be refunded to Vendee. *Failure to notify Vendor in writing within the time specified for examination of title by Vendee of defects or flaws in the said title shall constitute aceptance by Vendee of the said title. If title shall be marketable or so made within the granted term and Vendee shall refuse to accept the same and pay the additional monies and perform the covenants of this agreement, as herein set forth, then the above receipted monies may be retained by Vendor, without such retention affecting the rights of either party to enforce the specific performance of this agreement, of which time is of the essence."* (Italics supplied.)

The foregoing contract remained unrecorded and was later assigned by Atwood Cranston and his wife to the plaintiff, Boulevard Plaza Corporation. The assignment was in the following form:

"We hereby assign the attached purchase agreement to Boulevard Plaza Corporation.

"Atwood Cranston<br>Pauline Cranston"

It was neither dated, witnessed, nor acknowledged; it referred to no specific property or contract; it did not impose upon the assignee personal liability for the unpaid purchase price by an assumption and agreement to pay the balance of the purchase price according to the contract terms.

At the time of the execution of the purchase agreement, defendant also signed a letter which was delivered with a copy of the agreement to Douglas Rees Associates, Inc., a company which had undertaken to represent defendant as his real estate agent. The letter read as follows:

"March 10, 1953

"Douglas Rees Associates, Inc.
718 Second Avenue South
Minneapolis 2, Minnesota
"Gentlemen:
"My acceptance of the offer from Atwood-Cranston for the purchase of my Wayzata property is conditioned on the understanding that the extent of my liability under the warranty regarding the commercial zoning and use of the property shall be to return any money paid to me on account of this purchase if the property shall not be so zoned or if the purchaser shall be unable to secure the building permit, in which case I shall receive back a Quit-Claim Deed.

"My acceptance is further conditioned on the understanding that you shall determine within six months whether you can use the property for the purposes you intend.

"Very truly yours,
Kenneth Campbell"

The closing date under the contract terms was May 1, 1953. It does not appear that plaintiff ever claimed that the zoning referred to in the contract was not proper or that the vendee was unable to secure a building permit for the premises. While it appears to have been understood that the purchaser would have the immediate right to conduct soil tests, no satisfactory reason has been shown why such soil tests were not conducted prior to the time of the scheduled closing on May 1, 1953. It appears that the defendant owned the land in question, but that a Torrens certificate of title for that land had been issued in the name of his father, who had in turn executed and delivered to the defendant an unrecorded quitclaim deed to the land, both of which instruments defendant turned over to Douglas Rees Associates, Inc., at their offices on March 10, 1953, as proof of title and to enable the purchaser to take the necessary steps to have the title examined. The record indicates that a written title opinion was later delivered to plaintiff by an attorney of its own selection on July 8, 1953, but no copy thereof was ever furnished to defendant. Neither Cranston, the plaintiff, nor the corporation acting as agent for the defendant raised any question

as to marketable title. There was no offer to place the title opinion in evidence at the trial. The record fails to disclose any objection to the title.

The record indicates that during the times important to this action Douglas Rees Associates, Inc., the name of which was subsequently changed to Rees-Thomson-Scroggins, Inc., had listed defendant's tract of land for sale and at all times assumed to act as his sales agent and broker. The owners of the stock in the corporation were: Douglas Rees, Richard Thomson, and Maurice Scroggins. They were all active in the brokerage agency, but defendant dealt with Thomson and Scroggins.

The Boulevard Plaza Corporation was organized by Maurice Scroggins, in about 1948. Its offices became located in the same suite with those occupied by Douglas Rees Associates, Inc. Douglas Rees became the owner of all the shares issued by the Boulevard Plaza Corporation, which at times employed Rees-Thomson-Scroggins, Inc., to represent it in its real estate transactions. Douglas Rees owned 25 percent of the issued shares of Douglas Rees Associates, Inc., while Thomson and Scroggins owned all other shares except for a few held by salesmen.

It appears from the record that Atwood Cranston was an attorney at law, as was Maurice Scroggins, and that he was personal attorney for Douglas Rees, was secretary of the Boulevard Plaza Corporation, and with Douglas Rees and Mrs. Rees, was a member of its board of directors. Cranston admits that in the execution of the purchase agreement involved he acted as attorney and officer of the Boulevard Plaza Corporation; that he had represented Rees as his legal counsel on many occasions; had ready access to all the offices of both corporations; and was on friendly and familiar terms with Thomson and Scroggins. Cranston, however, had little knowledge of the property involved. He had never seen the land nor made any examination of it before the so-called purchase agreement was signed. His only direct dealing in connection with the property was through a letter dated June 25, 1953, addressed to defendant and one or two telephone calls either in June or July 1953. The record does not indicate directly or indirectly that he at any time told defendant of having executed and delivered an assignment of the purchase agreement to the Boulevard Plaza Corporation, or to Douglas Rees. At no time did he object to defendant's title.

He admits that he acted for Douglas Rees in connection with this transaction. Cranston testified that there had been some supplemental agreement extending the time for closing in order to allow time for soil testing, but no such supplemental agreement was produced or extension established. Defendant testified that prior to March 10, 1953, he supplied the real estate agency with figures on such tests, and that this was the last time he heard anything about soil testing.

No part of the money payments provided by the contract terms was offered or paid to defendant, not even the earnest-money downpayment. Defendant communicated with both Thomson and Scroggins around May 1, 1953, the settlement date, and asked for the $500 earnest-money downpayment and the $1,000 payment due on that date. While the purchase agreement recited that the downpayment of $500 had been received, it had not been forthcoming. In fact it had been paid to Richard Thomson for Cranston on March 19, 1953, and was being withheld. The $1,000 had not been paid at the time and the record indicates that it was not paid until the latter part of June 1953 and then the payment was by Douglas Rees. There had been no offer to execute and deliver the promissory note and first mortgage to cover the balance of the purchase price on May 1, 1953, or later. There never was a tender of consideration. It appears from the record that the reason given for the refusal to pay either the $500 earnest money or the May 1 payment of $1,000 to the defendant was that if the deal should fall through the defendant might not be financially able to return the money.

Defendant finally went to the offices of Rees-Thomson-Scroggins, Inc., on May 10, 1953, demanded a return of the title certificate and quitclaim deed from Mr. Thomson in the presence of Mr. Scroggins. According to defendant, both admitted having received the $500 earnest-money payment but stated that the $1,000 payment had not been received. Upon demanding and receiving the papers, defendant promptly told Thomson, Scroggins being present, that "the deal was off, there wasn't any deal." Nothing was said by anyone about a future meeting. Nothing appears in the record, either in writing or otherwise, as to any understanding that either of the parties was to do anything further about the deal. The defendant went to the office of the registrar of titles with his title papers. The taxes being paid, he had the quitclaim

deed recorded and the certificate of title reissued in his own name. The purchase agreement was never recorded nor does it appear that the registration tax was paid thereon. The defendant states that he has some recollection of being told by either Thomson or Scroggins on May 10, 1953, that the plaintiff corporation might become interested in the purchase but he was never advised as to any assignment of the purchase agreement and knew nothing thereof until this suit was commenced some 18 months after the agreed closing date. Cranston never paid any of the taxes on the premises nor did he or plaintiff enter into possession of the premises.

The plaintiff assigns as error the trial court's failure to amend its findings upon the grounds that the specific findings sought to be amended are not in accordance with the evidence, incomplete, and immaterial to the determination of the case, and on the further ground that the conclusions of law are not sustained by the findings of fact and therefore not in accordance with applicable law. The plaintiff stresses that the defendant was himself in default in tendering the required contractually specified evidence of title; that defendant had failed to cancel the contract, if in fact it was ever cancellable, under M. S. A. 559.21; that plaintiff had never abandoned its rights under the contract; and that there was no proof whatsoever of laches, encompassing unreasonable delay, by plaintiff prejudicial to defendant.

We are thus confronted at the outset with the question whether plaintiff is entitled to specific performance under the terms of the purchase agreement where it has failed to make any of the payments either recited or required by the terms of the contract; has failed to challenge the marketability of the title; and has failed to perform any and all of the provisions of the purchase agreement for a period of 18 months, without entering upon the land or otherwise taking possession thereof.

It is undisputed from the record that at all times important to this appeal Douglas Rees was a major shareholder in "Douglas Rees Associates, Inc."; that he was the president and sole owner of all the stock issued by plaintiff corporation; that the vendee Atwood Cranston was its secretary and an attorney at law who frequently represented both plaintiff corporation and Douglas Rees in similar transactions, and

admits that he represented both Douglas Rees and plaintiff corporation as agent and attorney throughout the transactions here involved; that Douglas Rees Associates, Inc., undertook to list vendor's land for sale and act as defendant's agent and broker prior to and at the time of the execution and signing of the purchase agreement, and letter of March 10, 1953, continuing in that capacity at least up to May 10, 1953, when defendant reclaimed his title papers and he told the representatives of the sales agency, as his broker, that the deal was off; that the record indicates that the fact that Atwood Cranston, the original vendee, was acting as agent and attorney for Douglas Rees and plaintiff corporation throughout the transaction involving the execution and delivery of the assignment was unknown to the defendant, and remained undisclosed, until such time as the plaintiff corporation commenced its suit for specific performance on November 5, 1954; and that those conditions, unknown to the defendant, were never consented to nor acquiesced in by him.

The defendant contends that Douglas Rees Associates, Inc., which company assumed to act for him as his real estate broker, was bound at all times to act solely for his benefit in all matters connected with the agency and that it was therefore in duty bound to communicate to him all facts of which the company and its representatives had knowledge which might affect his rights or interests; that therefore he may void the transaction, being ignorant of the double employment, without any showing of injury or intent to deceive; and that under the circumstances rescission was at all times his absolute right.

We think the facts here indicate double employment resulting in double agency and that there is merit to defendant's contention. This court has applied the rule which prevents the agent or trustee from acting for himself in a matter where his interests would conflict with his duty, and from acting for another whose interest is adverse to that of the principal and has held that a contract negotiated by an agent acting for both parties is voidable, or void as against a principal without knowledge of the double agency. We said in Magee v. Odden, 220 Minn. 498, 20 N. W. (2d) 87, that:

"An agent in the sale of real estate may not sell to himself without

the knowledge of the owner whom he represents. The inflexible rule, founded on public policy, is that such transaction shall not be permitted to stand against the principal unless it appears that with full knowledge of all the facts he either previously consented to or subsequently ratified it."

A leading case in Minnesota is Olson v. Pettibone, 168 Minn. 414, 210 N. W. 149, 48 A. L. R. 913. Also see, Norby v. Security State Bank, 177 Minn. 127, 224 N. W. 843; Bentson v. Ellenstein, 215 Minn. 376, 10 N. W. (2d) 282; Doyen v. Bauer, 211 Minn. 140, 300 N. W. 451; Whitten v. Wright, 206 Minn. 423, 289 N. W. 509; Olive v. Taylor, 182 Minn. 327, 234 N. W. 466; Sorenson v. Greysolon Co. 170 Minn. 259, 212 N. W. 457; Erickson v. Frazier, 169 Minn. 118, 210 N. W. 868; 1 Dunnell, Dig. (3 ed.) § 193; 37 Minn. L. Rev. 401, and cases cited; Annotation, 62 A. L. R. 63; Mechem, Outlines Agency (4 ed.) §§ 504, 505; Ferson, Principles of Agency, §§ 297, 298; Restatement, Agency, §§ 387 to 391.

Plaintiff contends that under all the circumstances and as a matter of law neither Cranston nor his assignee, the plaintiff corporation, was ever in default in performance of vendee's obligations under the contract since the defendant had failed to comply with the provision of the contract that the "Vendor shall furnish within 10 days from the date hereof * * * an owner's duplicate Torrens Certificate of Registered Title, showing good and marketable title in Vendor." Considering the evidence as a whole we feel compelled to reach the conclusion that under all the circumstances what transpired in that respect constituted substantial compliance with the provisions of the purchase agreement covering the matter of "showing good and marketable title in Vendor" under ordinary business custom and usage in such transactions, and the court so found. We find nothing in the record which would indicate that any objection was ever raised to the title, and moreover the plaintiff failed to put in evidence the title opinion which it admitted had been obtained from an attorney of their own selection in the month of July 1953. See, McKay v. Ryan, 204 Minn. 480, 284 N. W. 57; Paynesville Land Co. v. Grabow, 160 Minn. 414, 200 N. W. 481; John v. Timm, 153 Minn. 401, 190 N. W. 890; Johnson v. Herbst, 140 Minn. 147, 167 N. W. 356.

Plaintiff refers to the letter of March 10, 1953, which defendant signed and delivered to Douglas Rees Associates, Inc., with a copy of the purchase agreement. Since the vendor delivered title papers, as discussed when the agreement was entered into, and neither Cranston nor plaintiff ever made any demand in connection with the certificate of title and quitclaim deed, as delivered, or otherwise objected to the title over the entire period between the date of the contract and the commencement of the present action, no support can successfully be asserted now by reason of the contents of the letter in question.

██ Plaintiff further contends that the plaintiff's interest in the contract was never terminated under M. S. A. 559.21, which provides the exclusive method by which a vendor may terminate a purchaser's rights because of defaults, and that therefore the purchase agreement remains legally subsisting and enforcible. We have heretofore held that this section does not prevent the purchaser's abandonment of the contract and that this section does not provide the exclusive remedy of the vendor for a breach of the contract terms. This section is cumulative and not exclusive to the extent of ruling out the vendor's right of action against a defaulting vendee for specific performance on the one hand, or on the other, for a judicial determination of the contract. In fact, we have said that bringing an action is better for the vendee and gives him much more opportunity to protect his rights than the statutory cancellation. See, Enkema v. McIntyre, 136 Minn. 293, 161 N. W. 587, 2 A. L. R. 411; Bowers v. Norton, 169 Minn. 198, 210 N. W. 871; State Bank of Milan v. Sylte, 162 Minn. 72, 202 N. W. 70. Neither does this section relieve the purchaser from the effect of an abandonment which the vendor accepts.

██ No serious question appears to have been raised at the trial below because neither party had paid the mortgage registry tax. Had that question been raised during the trial, either party might have been permitted to pay the registry tax in order to provide the evidentiary requirements.

Since the defendant did not choose to follow the alleged exclusive method by which he might have terminated the purchaser's right because of defaults, the plaintiff lost no opportunity to protect its rights through an action for specific performance. The defendant had lost none

of his rights to appear and defend in an action for specific performance on the one hand or for a judicial determination of the contract on the other. In the early case of McDermid v. McGregor, 21 Minn. 111, 115, which we think is both applicable and controlling of the facts and the outcome in this case, this court said:

"* * * As to the failure to apply sooner for relief, the rule is that where, as in this instance, one party to the contract gives notice to the other that he will not perform it, acquiescence in this by the other party, (not being in possession,) by a comparatively brief delay in enforcing his right by an appeal to the courts, will be a bar. * * * What is said in Eastman v. Plumer, 46 N. H. 464, is in point. 'Those who desire to secure the aid of equity in enforcing the performance of contracts must show themselves prompt, ready and eager to perform them, and abide by them. *So, when either party to a contract of sale fails or refuses to claim or act under the contract, for such a length of time as to give the impression that he has waived or abandoned the sale or purchase, and more especially when the circumstances justify the belief that his intention was to perform the contract only in case it suited his interest,'* he will necessarily forfeit all claim to equity." (Italics supplied.)

The granting of specific performance of a purchase agreement like that in question in the instant case is under the authorities, not a matter of right, but of sound and reasonable discretion to be exercised according to the circumstances of the particular case. It is a well-established rule, where similar facts are involved, that unless he who seeks the aid of equity in enforcing a contract for the conveyance of land shall have been prompt, ready, and eager to perform upon his part and have exercised good faith and been diligent, the relief demanded should be denied him. We think the abandonment of the purchase agreement by the buyer without the consent of defendant, where time was of the essence of the contract, for a period of 18 months from the closing date —without the performance of a single term or provision of the agreement; without taking possession; and without the payment of taxes— amounted to more than a mere failure to perform the obligations of the contract. Certainly there has been an intentional disregard of the obligations created by the purchase agreement; a lack of good faith; and a

final situation, in the face of the defendant's attitude in the matter, not easily excused before a court of equity. Indulgence in permitting the withholding of the downpayment did not excuse the plaintiff's neglect to be prompt about title inquiries; to make payment of the amounts due; to take possession; or to make payments of taxes. The purchaser's failure to comply with the terms of the purchase agreement in every respect, as has occurred here, would ordinarily constitute ample and sufficient reason for refusal to grant relief from the default. See, Holingren v. Piete, 50 Minn. 27, 52 N. W. 266; Simpson v. Atkinson, 39 Minn. 238, 39 N. W. 323; Bredesen v. Nickolay, 147 Minn. 304, 180 N. W. 547; Baker v. Polydisky, 144 Minn. 72, 174 N. W. 526; Anderson v. Luther Min. Co. 70 Minn. 23, 72 N.· W. 820; DeHuy v. Osborne, 96 Fla. 435, 118 So. 161; Marsh v. Lott, 156 Cal. 643, 105 P. 968.

The applicable rule was well stated in an early case, Low v. Treadwell, 12 Me. 441, 449, where the court said:

"* * * where the party who applies for a specific performance has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient justification or excuse for his delay;—when there is nothing in the acts or conduct of the other party that amounts to an acquiescence in that delay, the court will not compel a specific performance."[1]

The evidence is clear that defendant demanded his money repeatedly without even receiving the downpayment or a single dollar of the consideration stated. The reasons expressed on the part of the plaintiff and its witnesses for the failure to pay the money and close the deal on May 1, 1953, are not borne out by the evidence. No good reason has been given for not closing at the appointed time. Diligence was wanting, as was any genuine explanation of the delay. The trial court's memorandum indicates that there was such laches, lack of good faith, and nonperformance on the part of plaintiff that the outcome of this litigation must be governed by the rule that such a plaintiff is not entitled to

[1]Also see, McDermid v. McGregor, 21 Minn. 111; Gentry v. Rogers, 40 Ala. 442; Ketcham v. Owen, 55 N. J. Eq. 344, 36 A. 1095; Annotation, 11 A. L. R. (2d) 394, 396; Annotation, 65 A. L. R. 53.

specific performance. 17 Dunnell, Dig. (3 ed.) § 8778. The court below did not feel that its equitable power should be used to enforce the purchase agreement under the facts as the record disclosed them.

It is the rule that the determination of the real party in interest in an action is ordinarily a question of fact. Colstad v. Levine, 243 Minn. 279, 67 N. W. (2d) 648.

Specific performance of a contract to convey real estate is a well-recognized remedy. However, the granting of specific performance is governed by fixed principles, and if satisfactory proof is made that the contract is fair and was fairly made, specific performance should be decreed. But specific performance of a contract to convey real estate is not a matter of absolute right, and if enforcement would be unconscionable or inequitable, performance will not be decreed. In so far as the court may take into consideration the diligence and good faith of the parties, and the fairness of the transaction, specific performance is a matter of discretion.[2]

While the assignment of the purchase agreement created a privity of estate between plaintiff and defendant, it did not create a privity of contract, and in the absence of an assumption or agreement on the part of the plaintiff to pay the unpaid purchase price, he assumed no personal liability therefor to defendant. Cranston, the original vendee in the purchase agreement, is not a party to the suit for specific performance. See, Pratt v. Martig, 182 Minn. 250, 234 N. W. 464; Hoyt v. Kittson County State Bank, 184 Minn. 159, 238 N. W. 41; Klostermann v. Farmers & Merchants State Bank, 176 Minn. 459, 223 N. W. 780.

We think the record amply sustains defendant's claim that he never recognized the purchase agreement as being in force after he reclaimed his title papers from his real estate broker, Douglas Rees Associates, Inc., on May 10, 1953. We think that defendant had ample justification

---

[2]Bredesen v. Nickolay, 147 Minn. 304, 180 N. W. 547; Enkema v. McIntyre, 136 Minn. 293, 161 N. W. 587, 2 A. L. R. 411; Coates v. Cooper, 121 Minn. 11, 140 N. W. 120; Selover v. Isle Harbor Land Co. 91 Minn. 451, 98 N. W. 344; Abbott v. Moldestad, 74 Minn. 293, 77 N. W. 227, 73 A. S. R. 348; Buckley v. Patterson, 39 Minn. 250, 39 N. W. 490; Austin v. Wacks, 30 Minn. 335, 15 N. W. 409.

for concluding that the other party to the purchase agreement only intended to perform according to its terms, in case it suited his interest, and that he was fully justified in concluding that the contract was no longer binding upon him.

■ Upon this appeal from the judgment, since no motion was made for a new trial, we are concerned only with the issues of whether the evidence sustained the trial court findings and whether those findings support the conclusions of law and the judgment. It was for the court to resolve the conflicts in the testimony.

The burden is on plaintiff here to show that there is no substantial evidence reasonably tending to sustain the trial court's findings. This court on appeal will consider the testimony in the light most favorable to the prevailing party. If the evidence as a whole tends to support the findings, they should not be disturbed. The findings of the trial court, as the trier of the facts, are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence, and such rule applies whether an appeal is from a judgment or an order granting or denying a new trial. Holt v. Swenson, 252 Minn. 510, 90 N. W. (2d) 724; Nielsen v. City of St. Paul, 252 Minn. 12, 88 N. W. (2d) 853; Ketterer v. Independent School Dist. No. 1, 248 Minn. 212, 79 N. W. (2d) 428; Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640; Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176; 1 Dunnell, Dig. (3 ed.) § 415.

It is our view that the plaintiff has failed to sustain the required burden of proof and that the judgment of the court below must be affirmed.

Affirmed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.